UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

Harold B. Cornish

**Plaintiff**

ORIGINAL

CASE NO.

**JURY TRIAL DEMANDED**

V.

Lancaster Independent School District and/or Lancaster Independent School District Board of Trustees
Former Superintendent Larry Lewis (Individual and Official Capacity)
Interim Superintendent Dana Marable (Individual and Official Capacity)
Human Resource Director Pamela Carroll (Individual and Official Capacity)
Assistant Superintendent Eugene Young (Individual and Official Capacity)
Attorney Cynthia Hill (Individual and Official Capacity)
Former Student Psychologist Stanley Brein (Individual and Official Capacity)
Former Chief of Police Samuel Allen (Individual and Official Capacity)
Acting Police Chief Keith Wilkerson (Individual and Official Capacity)
Attorney Leslie McCollom (Individual and Official Capacity)
Attorney John Peter Lund (Individual and in Official Capacity)
Defendants



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
APR 1 9 2010
CLERK, U.S. DISTRICT COURT
By _____
Deputy

---

TO THE HONORABLE COURT, NOW COMES PRO SE PLAINTIFF Harold B. Cornish filing this Title VII of 1964 Civil Rights Act and as amended complaint with the Court against the Defendant(s) Lancaster Independent School District and/or Lancaster Independent School District Board of Trustees (sued in official capacity) and the individually named Defendant Lancaster Independent School District (LISD) employees in their official and individual capacity all are Defendants in this claim.

### JURISDICTION

1. Jurisdiction is conferred upon this Court because Plaintiff Cornish alleges Defendants injured him by violating his rights under federal laws and/or federal statutes and federal laws (1964 Civil Rights Act and as amended Retaliation, 14th Amendment, U.S. Code 1983, and U.S. Code 1985) according the United States Code and or state statues.

2. Plaintiff anticipates that additional federal and state claims that are in the administrative process (internally and/or with regulatory agencies) will be filed following the final disposition.

3. Plaintiff anticipates that he will later need to request for the Court to accept supplemental jurisdiction over any and all state constitutional and state law claims that are so related to the claims (Whistle

1

Blower Claims) within the original jurisdiction of this Court that they will form part of the same or controversy but must be grieved administratively before bringing the claim(s) before the Court.

4. The incidents forming the basis of this lawsuit occurred in the City of Lancaster, Dallas County, Texas.

## VENUE

5. Venue is proper in the United States District Court for the Northern District of Texas.

## PARTIES

6. Plaintiff Cornish was an employee of Defendants Lancaster  Independent School District and  U.S. Army Reservist residing at 601 Nora Lane DeSoto, Texas 75115 during the time periods surrounding this lawsuit . The actions claimed by Plaintiff resulted during Plaintiff's employment with the Defendants Lancaster Independent School District

7. All Defendants were either employed during the time periods alleged by Plaintiff in this lawsuit and/or were involved adverse actions imposed on Plaintiff during the alleged incidents.

8. Defendant Lancaster Independent School District Board (are and were the policy making and enforcing authority of Defendants during the time periods involving this claim), Lancaster Independent School District Board of Trustees  and Lancaster Independent School District Board of Trustees mailing address is  422 S. Centre Avenue Lancaster, Texas 75146. This address is the official physical and mailing address for the board of trustees who oversees the district.

9. Defendant Former Superintendent **Larry Lewis** at 422 S. Centre Avenue Lancaster, Texas 75146, now an Assistant Principal for Cedar Hill School District. Was the Superintendent for Lancaster Independent School District from November 2005 to November 2007. Is being sued individually and in Official Capacity.

10. Defendant Lancaster Independent School District Interim Superintendent **Dana Marable** at 422 S. Centre Avenue Lancaster, Texas 75146.  Is currently the Interim Superintendent following Superintendent Larry Lewis's reign and was in 2009. Is being sued individually and in Official Capacity.

11. Defendant Lancaster Independent School District Assistant Superintendent **Eugene Young** at 422 S. Centre Avenue Lancaster, Texas 75146. Was the assistant superintendent for Lancaster Independent School District from November 2005 to November 2009. Is being sued individually and in Official Capacity.

2

12. Defendant Lancaster Independent School District Human Resource Director **Pamela Carroll** at 422 S. Centre Avenue Lancaster, Texas 75146. Was the Human Resource Director for Defendants from November 2006 to the present. Is being sued individually and in Official Capacity.

13. Defendant Lancaster Independent School District Attorney **Cynthia Hill** at 306 W. 7th Street Suite 1045 Fort Worth, Texas 76102. Was employed with the Defendants as an attorney for the Defendants on or about September 2007. Is being sued individually and in Official Capacity.

14. Defendant Lancaster Independent School District Attorney **Leslie McCollom** at 808 West Avenue Austin, Texas 78701, Texas 75146. Was employed with the Defendants as an attorney for the Defendants on or about January 2009. Is being sued individually and in Official Capacity.

15. Defendant Former Lancaster Independent School District Student Psychologist (NON -PH.D.) **Stanley Brein** 405 Pecan Hollow Drive Red Oak Texas 75154-4725. Was employed as a student psychologist for the Defendant and was employed during June 2006 and April 2009. Is being sued individually and in Official Capacity.

16. Defendant Lancaster Independent School District Former Chief of Police **Samuel Allen** at 1653 S. Duncanville Road Cedar Hill, Texas 75104. Is being sued individually and in Official Capacity.

17. Defendant Lancaster Independent School District Acting Police Chief **Keith Wilkerson** at 422 S. Centre Avenue Lancaster, Texas 75146. Is being sued individually and in Official Capacity.

18. This is a employment retaliation and hostile work environment lawsuit under Title VII of the 1964 Civil Rights Act and as amended, U.S. Code 1983  14th Amendment and U.S. Code 1985 Conspiracy. The time period of which the discrimination occurred has been continual since November 2006 prior to several Plaintiff Cornish's military tours ranging from 4 days to 400 plus leave and re-adjustment back into society. Therefore, Plaintiff Cornish pleads under the Soldier Sailor Act that the Court allows the statute of limitation period to be extended due Plaintiff's constant and continual military obligation from November 2006 to October 2009 of which involved actionable discrimination against the Plaintiff imposed by Defendants Lancaster Independent School District and/or it's representatives.  There are Whistle Blower violations, USERRA and additional Title VII violations (the additional Title VII violations occurring after late November 2009) that Plaintiff anticipate to amend the complaint later to add these charges after the charges have proceeded through the administrative process whether internal or external.

19. Defendants Lancaster Independent School District Board of Trustees are the governing body of the Lancaster Independent School District engaged in business commerce as a school district employing more than 500 employees and formerly employed Plaintiff Cornish as a Police Officer and demoted after Plaintiff returned from an active tour of military service from November 26, 2007 to January 12, 2009, Plaintiff returned to work and was never returned back to his rightful position, and status as a police officer and Plaintiff alleges and re-alleges through this complaint the same. 25. The Plaintiff Cornish also seeks damages against the Defendants in their individual and official capacity for their willful and wanton violations of Plaintiff's rights under federal laws and/or statutes Title VII 1964 Civil Rights Act (Retaliation for Plaintiff's engaging in protective activities opposing employment race discrimination and/or retaliation against Plaintiff's and former employer. The Plaintiff anticipates later amending this lawsuit by filing USERRA complaints , Texas Whistle Blower (Texas Government Code ANN. 554) claims and additional Title VII claims that will too address U.S. Code 1983, U.S. Code 1985 Conspiracy, U.S. 14th Amendment (due process) and other federal and state claims of injury.

20. The Plaintiff Cornish also seeks damages against the Defendants in their individual and official capacity for their willful and wanton violations of Plaintiff's rights under federal laws and/or statutes Title VII 1964 Civil Rights Act (Retaliation for Plaintiff's engaging in protective activities opposing employment race discrimination and/or retaliation against Plaintiff's and former employer. The Plaintiff anticipates later amending this lawsuit by filing USERRA complaints , Texas Whistle Blower (Texas Government Code ANN. 554) claims and additional Title VII claims that will too address U.S. Code 1983, U.S. Code 1985 Conspiracy, U.S. 14th Amendment (due process) and other federal and state claims of injury. On November 15, 2002, Plaintiff Cornish was initially hired by former Lancaster Independent School District Police Chief Carl Headen as a police officer who worked for approximately 2 to 3 weeks.

21. On November 15, 2002, Plaintiff Cornish was initially hired by former Lancaster Independent School District Police Chief Carl Headen as a police officer who worked for approximately 2 to 3 weeks.

22. Defendants Board of Trustees during a board meeting refused to approve the hiring of Plaintiff Cornish with the former Board President Nannette Vick citing that Plaintiff had sued or was suing his former employer Dallas Police Department for employment discrimination as defined by Title VII of the 1964 Civil Rights Act and as amended.

23. The lone opposing vote cast amongst the board members was that of then Board Vice-President Carolyn Morris.

24. The Dallas Equal Employment Opportunity Commission (EEOC) issued a favorable letter of determination basing their ruling on the statement of the Board's Vice President Morris.

25. Plaintiff in November 2002 during his initial application for police officer with Defendants possessed a 4 year degree in Criminal Justice, 2 year degree in Liberal Arts (emphasis in Police Science, Texas Commission on Law Enforcement Standards and Education (TCLOSE the state of Texas licensing authority for all Texas Peace Officers) Master, Advance, Intermediate, Basic, and Instructors certifications, over 20 years in law enforcement experience (ranging from jailer, patrolman, criminal and administrative investigation, court room testimony, academy training, field training, community relations, supervision etc., experience in dealing with and counseling troubled juveniles, more than 12 years in the U.S. Military Reserve as a commissioned officer  and additional experiences. Plaintiff Cornish's credentials far exceeded the minimum requirements for the entry level police position that he applied for with Defendants and was not approved by the board.

26. The Defendants Board of Trustees were aware of the Plaintiff's professional credentials because they were provided copies.

27. Defendant's former LISD Police Lieutenant Ryan Getty pursuant to orders of former LISD Police Chief Carl Headen went to the City of Dallas premises and reviewed Plaintiff's entire personnel and disciplinary files.

28. Defendant's former LISD Chief of Police Headen lied to the Texas Workforce Commission (TWC)  in an attempt to prevent Plaintiff from obtaining unemployment benefits Alleging that Plaintiff lied on his application for employment by not sytating that he was fired by a previous employer Correctional Services Corporation (Juvenile Correction Facility). It was determined by TWC that Plaintiff did not lie on his application because Plaintiff did state on the application he was fired after he reported that a coworker had injured a juvenile. Plaintiff was granted his unemployment benefits.

29. Plaintiff Cornish petitioned orally and by written petition for the Board of Trustees and the former Interim Superintendent Thomas Poore to reconsider but neither the board of trustees or the Interim Superintendent Poore moved on Plaintiff's  Title VII discrimination grievance petition and the grievance was never heard.

30. Defendants during the time Plaintiff filed his discrimination petition with Defendants who had in place a written policy prohibiting employment discrimination against applicants and employees whom have

5

engaged in protective activities that opposed employment discrimination related to race discrimination and/or Title VII.

31. Defendant's never heard or acknowledge the Plaintiff Cornish's verbal and/or written notice of grievance complaint/petition.

32. January 13, 2003, Plaintiff Cornish then later filed a discrimination complaint with the Dallas U.S. Equal Employment Opportunity Commission (Charge #310A300733) alleging discrimination based on retaliation for Plaintiff's past participation in protective activities that opposed employment discrimination based on race and age discrimination (40 and older).

33. May 28, 2003, Plaintiff appeared before the LISD Board of Trustees petitioning the LISD Board again reconsider his hire in a retaliation and age discrimination complaints.

34. Defendants the Board of Trustees never addressed Plaintiff's internal discrimination grievance complaint referencing the discriminatory hiring practices imposed on Plaintiff.

35. Around May 2005, prior to Defendant Sam Allen becoming Chief of Police he began phoning Plaintiff advising Plaintiff Cornish that he was trying obtain the position of Chief of Police with the Defendants and that he could use the fact that he could settle the Plaintiff's pending retaliation case as chief of police. Allen initially suggested to Plaintiff a temporary position could be suggested by him to former Superintendent Defendant Larry Lewis. Plaintiff advised him that he would only accept a permanent position with some damages. Defendant Allen before his appointment and following his appointment to chief of police met and phone Plaintiff several times to discuss possible settlement. Defendant Allen advised Plaintiff that the Defendants LISD Officials realized that the Plaintiff had a good case against them that could embarrass them and they did not want this case to go to court.

36. On November 8, 2005, after Plaintiff Cornish successfully settled his Title VII Retaliation employment discrimination lawsuit (that followed after the Defendants refuse to approve Plaintiff for hire on or about December 03, 2002) he filed against the Defendants by way of (U.S. Northern District Court of Texas) Federal Court Ordered Mediation on Cornish (Plt) v. Lancaster Independent School District (Def) Case # 3:04-CV-2368G.

37. The settlement agreement was signed by Plaintiff on November 20, 2005 and Defendant Lewis on November 17, 2007.

38. Immediately following Plaintiff's the mediation hearing which settled the case but just prior to Plaintiff's November 8, 2005 hiring by the Defendants, Defendant Sam Allen Chief of LISD Police

Department had Plaintiff meet Defendant LT Wilkerson at LISD Football Stadium where Chief Allen introduced Plaintiff to Defendant Wilkerson. Defendant Allen suggested that the Plaintiff and the Defendant Wilkerson ride on the Defendant's golf cart and talk. Both Plaintiff and Defendant Wilkerson complied.

39. While Plaintiff was riding with Wilkerson, Defendant Wilkerson advised Plaintiff that he had suggested to Chief Allen that it would be political suicide for Chief Allen to recommend Plaintiff Cornish for hire because Plaintiff had sued the Defendants, before Plaintiff had successfully settled the lawsuit.

40. Plaintiff informed Defendant Allen of the conversation that he had with Defendant Wilkerson and Defendant Allen advised Plaintiff Cornish that Defendant Wilkerson was intimidated by Plaintiff Cornish's experience and education and that Defendant Wilkerson should be because he lacks your credentials, training, and skills for the job and that Defendant Allen's goal was to get them trained by utilizing Plaintiff.

41. After Plaintiff was hired by LISD, day one Defendant Allen advised Plaintiff that the current LISD police officers were overweight, possessed little are no college, lacked basic law technical skills, knowledge, experience, and training. Defendant Allen informed Plaintiff that he needed Plaintiff on the department to bring professional creditability to the department.

42. Defendant Allen advised Plaintiff that the LISD officers were in poor physical condition and appointed Plaintiff to implement the Cooper Physical Fitness examination where Chief Allen ordered that all LISD police officers would be consistently tested by Plaintiff until they passed the examination.

43. Defendant Allen advised Plaintiff Cornish that the lack of training, education and experience was reflected on the officers TCLOSE training records.

44. The Texas Commission on Law Enforcement Officers Standards and Education (TCLOSE) have been the licensing authority for all training and education for all Texas certified peace officers including LISD police officers.

45. All LISD Police Officers training was reflected on their TCLOSE training transcript.

46. Immediately following Plaintiff's Nobvember 8, 2005 hire, Defendant Allen advised Plaintiff that his current staff lacked even basic skills of: citation writing, investigation, arrests, interviewing, interrogation, penal code interpretation, problem resolution and report writing skills necessary to conduct law enforcement functions and that he knew that Plaintiff possessed these skills based on

7

Plaintiff's application, resume, and knowing that Plaintiff had served in numerous positions as a Dallas Police Officer.

47. Defendant Allen referenced by name all his subordinate police officers (Keith Wilkerson, Eltoro Foster, Melba Thorne, H. D. Gilliam, and Anthony Austin) when he advised Plaintiff Cornish of their lack of training, experience, and education.

48. Defendant Allen informed Plaintiff that he was told by Superintendent Larry Lewis that the police officers would not get any pay raises until they demonstrates that they are professionally competent and that he needed Plaintiff to train them to that level. During Plaintiff's employment history with Defendants, Defendant Allen on numerous different occasions restated the same to Plaintiff.

49. In a September 5, 2007, email sent by Plaintiff to Defendant Allen, Plaintiff would later remind Defendant Allen of his previous assessments of LISD police officers as they were conveyed to Plaintiff by Defendant Allen.

50. Prior to Plaintiff's hire he was aware of Defendants Allen and Wilkerson each being previously terminated at least 2 different police agencies.

51. Defendants Allen and Wilkerson each have been previously terminated by at least 2 different police agencies.

52. While employed by Defendants, Defendant Wilkerson advised Plaintiff that he was previously terminated from both Cockrell Hill Police Department and Dallas County Constable's Office.

53. Defendants Lancaster Independent School has never retaliated against Defendants Allen or Wilkerson for any previous terminations.

54. Defendants have never rejected either Defendants Allen and/or Wilkerson for engaging in anti employment discrimination activities.

55. Defendants Lancaster Independent School District historically after hiring police officers have never took any adverse administrative employment action against Sam Allen, Keith Wilkerson, Raymond Dyson, Cory Duncan, Melba Thorne, H. D. Gilliam, Anthony Austin citing in any manner as to whether these officers engaged in protective activities opposed to discrimination under Title VII.

56. When Plaintiff was hired November 8, 2007, Defendant Allen advised Plaintiff that no Police Code of Conduct, no police report tracking system, no one under his supervision with the investigative skills to properly investigate and submit for prosecution a pending high profiled theft arrest case involving employee Katrina Stephens. Defendant.

8

57. Immediately following Plaintiff's hiring of November 8, 2005, Defendant Allen assigned Plaintiff Cornish to conduct the follow-up investigation for prosecution and Plaintiff Cornish successfully did so.

58. Defendant Allen advised Plaintiff that he feared that the 3 months following the arrest of Katrina Stephens (prior to Plaintiff Cornish's November 8, 2005 hire) and no follow-up investigation of filing the case with the Dallas District Attorney's Office could cause the case to be dismissed.

59. Defendant Allen was very critical of Officer Austin who only had less than a year experience, because Defendant Allen believe that Austin's procrastination in not filing the Katrina Stephens case could have embarrass the Defendants.

60. Plaintiff in the process informed Defendant Allen that this was an opportunity to train young officer Anthony Austin who was initially assigned the Katrina Stephens case but did not have the knowledge or experience to conduct the follow-up investigation.

61. The results of the investigation conducted by Plaintiff on the Katrina Stephens Theft case was an indictment, conviction and court ordered restitution.

62. November December 2005, Plaintiff was given the duty by Chief Allen to create a report tracking system for LISD Police Department. Plaintiff created a tracking system using a Micro Soft Excel computer file.

63. Defendant Allen immediately implemented to report tracking system created by Plaintiff Cornish until the Defendants purchased a professional computer tracking system.

64. Around December 2005, Defendant Allen introduced Plaintiff to the LISD High School Principal Randall and Assistant Principal Roosevelt Nivens on different occasions advising that that Plaintiff had successfully sued the Defendants for discrimination and was the reason Plaintiff was employed.

65. Defendant Allen around December 2005, advised Plaintiff to prepare to test all LISD police officers for physical fitness and stated to Plaintiff Cornish that every police employee had to continue to take it until they passed it..

66. No LISD police officer passed the physical fitness evaluation but Plaintiff Cornish.

67. In March 2006, Plaintiff Cornish was contacted by the Defendant Wilkerson who voiced concerns about his inability to passed the physical fitness evaluation.

68. Plaintiff Cornish advised the Defendant Wilkerson that he needed to speak with Defendant Allen the chief of police on the matter.

9

69. Plaintiff informed the Defendant Wilkerson that pursuant to Defendant Allen's orders, "All LISD Police Officers must take and pass the test.

70. Defendant Wilkerson, Allen, and all other LISD Police Officer never passed the physical fitness test.

71. Around January or February 2006, Plaintiff was assigned to the Junior High School and Defendant Allen and when introducing the Plaintiff to Principal Stephanie Norman Defendant Allen advised Principal Norman that Plaintiff had successfully sued Defendants LISD for discrimination and was hired.

72. Around January or February 2006 Defendant Allen assigned Plaintiff as the Junior Police Academy Coordinator to teach students about law enforcement, citizenship, community relations etc .at the Junior High School.

73. Plaintiff successfully executed his duties without incident and without any financial resources from LISD for payment for supplies and equipment.

74. Plaintiff also was assigned the duty of teaching grades K-4 through 4th grade the Eddie Eagle Gun Prevention Program.

75. Around March 2006, Plaintiff was given additional duties by Defendant Allen to investigate criminal and administrative thefts of that led to the dismissal of several LISD custodian employees. Defendant Allen advised Plaintiff Cornish that this was an opportunity to ensure thoroughness and build LISD Police department's reputation as a competent law enforcement agency. Plaintiff successfully completed all assignments without incidents.

76. Defendant Allen assigned Plaintiff Cornish to do motivational speaking to students about continuing college education in the elementary through high schools.

77. Plaintiff was given additional duties by Defendant Allen of speaking to students about the military because Plaintiff was and is a current Army Reserve Officer.

78. March 2006, Days following Plaintiff failing Defendant Wilkerson and all other LISD police officer on the physical fitness test Defendant Wilkerson alleged Plaintiff was insubordinate. The reason was because Defendant Wilkerson wanted Plaintiff to commit an unsafe act of leaving one female juvenile and approximately 12 to 13 boys in a class room alone without any supervision which is a violation of policy and Texas Education Agency Regulations.

79. Defendant Wilkerson was trying to get Plaintiff to make a morning meeting with other staff members. Defendant Wilkerson advised Plaintiff to just leave the students that Plaintiff was teaching as the Junior Police Academy Coordinator.

80. In March 2006, the former Human LISD  Resource Director Karla Brewer advised Plaintiff that it was clearly a violation for an instructor to leave a class room of students unattended.

81. Defendant Wilkerson made no arrangements for anyone to come to the class room to relieve Plaintiff.

82. In an effort to comply with both Defendant Wilkerson command and consider the safety, welfare according to the law and officers discretion Plaintiff marched the students to the school office and left them there where Plaintiff made the meeting on time and was at least earlier than 2 to 3 other fellow officers.  Plaintiff explained this to Defendant Allen.

83. Defendant Wilkerson in the presence of Plaintiff made a false statement to Defendant Allen that Plaintiff had questioned Defendant Wilkerson's authority on several occasions.

84. When Plaintiff asked Defendant Wilkerson to give specific incidents, defendant Wilkerson stated, "Oh Boy," "I knew you were going to ask that and I don't have specific." "You know what they say if you can't prove it then you should not state it."

85. Plaintiff then stated to the Defendant Wilkerson that he was making false allegations against Plaintiff to the top official (Defendant Allen) in the LISD Police Department and for no justifiable reason.

86. Defendant Wilkerson then stated that he retracted the statement.

87. Plaintiff was never disciplined on this incident.

88. The Plaintiff explained this to Defendant Allen who advised Plaintiff that no discipline was placed in the Plaintiff's files.

89. Defendant Allen later advised Plaintiff Cornish that Defendant Wilkerson was intimidated by Plaintiff's experience and credentials. Defendant Allen advised Plaintiff that Defendant Wilkerson had came to Defendant Allen and asked what do he needs to do to reach the professional level of Plaintiff Cornish and Defendant Allen advised Plaintiff Cornish that he informed Defendant Wilkerson that he needed several years of law enforcement experience, college education improved writing skills, and other technical skills needed in the law enforcement profession

90. Plaintiff requested that Defendant Allen stop bring up the fact that Plaintiff filed a lawsuit against the Defendants and that the Defendant stop boasting Plaintiff's credentials before the Defendant Wilkerson. Defendant Allen responded to Plaintiff Cornish, "Harold I have advised Keith that he is not where you are professionally or educational wise and I will continue to do so because he needs to understand that and work towards professional development. Plaintiff Cornish advised Defendant Allen that this was causing Plaintiff to be targeted or retaliated against by Defendant Wilkerson and if

11

Defendant Allen maintained his position he needed to assure Plaintiff Cornish that he would protect him from retaliation. Defendant Allen affirmed that he understood.

91. Around April and May 2006 Defendant Allen had Plaintiff Cornish coordinate Junior Police Academy Cadet (students) to participate in the May and November 2006 and May 2007 LISD Bond Election Campaign Neighborhood Walk.

92. In late 2006 and Spring of 2007 Defendant Allen assigned Plaintiff to additional duties of assisting the LISD Junior Reserve Officers Training Corps (JROTC) at the junior high and high school in their training. Plaintiff successfully executed these assignments/duties without incident.

93. Around Spring 2006, Defendant Allen introduced Defendant Stanley Brein to the LISD Police Department as the staff psychologist whose duties will be to assist the district in assessing students behavioral problems.

94. Defendant Brein was licensed by the Texas Board of Psychological Examiners during his tenure with LISD.

95. Defendant Brein from the time Defendant Allen introduced him to Plaintiff to September 2007 was not licensed or qualified to evaluate police officers without the supervision of a senior properly licensed psychologist.

96. Defendant Allen also advised Defendant Brein that Plaintiff had successfully sued and settled a discrimination lawsuit against the Defendants LISD.

97. June 2006 Defendant Allen phoned Plaintiff while Plaintiff was on Army Reserve status and request Plaintiff to assist LISD Officer Anthony Austin in filing a grievance on the pay raise. Defendant Allen mention that it was not fair that LISD White Police Officer H. D. Gilliam who had far less training than most of the police officers and did the same duties as the other police officers including Melba Thorne a female officer but was paid approximately $10,000.00 more. Defendant Allen informed Plaintiff if Plaintiff was asked if Allen spoke with Plaintiff to convey that we never had this conversation.

98. November and December 2006, Plaintiff on his own initiative successfully coordinated to feed 51 families for Thanksgiving and Christmas holidays in the Lancaster community as LISD Junior Police Academy Coordinator.

99. Defendant Lewis' email response to this was that it was "Outsanding"

100.    September 2006, Plaintiff reported to LISD Custodian employee Larry Wall's home because he had either lost or suspected his keys which unlocked the doors throughout LISD school property were

12

stolen. Defendants Allen and Wilkerson advised the Plaintiff and other LISD Police Officers that this was an opportunity for them to make overtime because the district had to be patrolled 24 hours a day while the keys were missing. Defendant Wilkerson's remarks were, "I am going to milk them Muther Fuckers for every dollar I can."

101.    By November 2006, Defendant Allen was advising the Plaintiff and other LISD Police Officers during meeting that LISD staff member Mr. Lotten was criticizing LISD Police Department on overtime used since September 2006. Defendant Allen advised that he promised Defendant Lewis that he would lower the overtime.

102.    Neither Defendants Allen or Wilkerson took any steps to re-schedule LISD Police Officers to accommodate the promise Defendant Allen made to Defendant Lewis. Plaintiff brought this to the attention of both Defendants Allen and Wilkerson to only be shunned and told that the overtime would reduced.

103.    As Defendants Allen and Wilkerson persistently ordered Plaintiff and officers to work mandatory overtime due to the missing keys the Plaintiff and other LISD police officers continue to work and submit time sheets. This was later discussed with Defendants Young and Human Resource Director (HRD) Carroll by Plaintiff verbally and during the hostile work environment complaint/grievance filed by Plaintiff.

104.    November 2006 while Plaintiff was conducting military drill maneuvers Defendant Allen spoke with Plaintiff by phone requesting when Plaintiff ended his daily tour military duties that the Plaintiff report back to work each day and return to military duty in the morning. Plaintiff advised defendant Allen that it was illegal to do so under the Uniform Military Justice Code.

105.    November 2006, Defendant Allen and Defendant began making it mandatory for LISD police officers to participate in the LISD Bond Election Campaigns by way of both verbal and written email orders. This had also been done in May 2006. Plaintiff advised both Defendants Allen and Wilkerson that it was improper to force this on public safety employees or any LISD employee without compensation. Both Defendant Allen and Wilkerson advised Plaintiff that the orders would be followed without compensation. Plaintiff complied and was the only LISD police officer to submit submitted overtime sheets and was told again by Allen that the money would not be paid.

106.    December 2006, Defendants Allen and Wilkerson came in a meeting with LISD police officers demanding that the police officer substitute overtime for compensatory time. Defendant Allen state

position was because he promised Defendant Lewis that he would reduce the overtime. Plaintiff explained to both Defendants Allen and Wilkerson that the overtime was mandatory and that officers had to be paid according to their choice of overtime and that the Plaintiff request would remain the same to be paid in overtime. All other LISD police officers reduced their overtime and submitted compensatory time sheets. This was later discussed with Defendants Young and Human Resource Director (HRD) Carroll by Plaintiff verbally and during the hostile work environment complaint/grievance filed by Plaintiff.

107.	December 2006, while Plaintiff was at the LISD Junior High (Elsie Robertson), Defendant Allen nearly pushed a class room door into the face of the Plaintiff as the Plaintiff while teaching a JPA class was opening the door as he saw the Defendant Allen approach with Lancaster City Police Officers.

108.	December 2006 during daily detail at the LISD police headquarters Plaintiff Cornish was told to close the door during the meeting because of the loud voice from the JROTC Hall and when Plaintiff complied Defendant Allen again attempted to push the back into the face of the Plaintiff. Plaintiff made requests to Defendant Allen to speak with him because he suspected that Defendant Allen was being hostile towards him but it was to no avail.

109.	December 2007, Plaintiff transferred from an army military police unit to an army civil affairs unit and explained to both Defendants Allen and Wilkerson that he would have to attend a mandatory officer civil affairs school. Plaintiff reminded them on several different occasions.

110.	Plaintiff during his employment with LISD a a police officer was placed in numerous situation where he had to use reasonable force to restrain and or control LISD students Jamesha Jackson, Todd Brown, Marquis Montgomery, Quacy Bell and other student who were either fleeing, resisting, injuring themselves or others, and/or assaulting Plaintiff. Many of these student had displayed constant disruptive behavior within the LISD. Plaintiff utilized all reasonable alternative measures on each incident before escalating to physical force and only used the reasonable amount of force necessary to cease any resistance. Plaintiff provided detailed written reports on each incident to both Defendants Allen and Wilkerson.

111.	January 2007 Defendant Allen, while Defendant Allen was introducing Plaintiff to the City of Lancaster Police Chief in the main hallway of the LISD High School, Defendant Allen explained that Plaintiff had successfully sued LISD and as Plaintiff was walking away the Defendant Allen slapped Plaintiff with his open left hand on the back of the head. Plaintiff was embarrassed and just kept

14

walking away. Plaintiff attempted on several different occasions to meet with the Defendant Allen on this matter and the two incidents of which the Defendant Allen nearly slammed doors into Plaintiff's face but it was to no avail. The Defendant Allen would not meet and discuss these matters with Plaintiff and only showed an interest after Plaintiff began requesting to speak to Defendant Assistant Superintendant Young on matters of public concern.

112.    Defendants Lancaster Independent School District former Chief of Police Sam Allen did on or about September 6, 2007, took adverse administrative action against Plaintiff (placing Plaintiff on administrative leave) citing, "On November 8, 2005, you were hired by the Lancaster ISD Police Department, in part to resolve a lawsuit you filed against the district. You were brought here with high expectations as well as with warnings from others that I would regret hiring you. This was a chance for you to get your career back on track and an opportunity for the district to gain an experienced officer."

113.    November 23, 2009, following several of Plaintiff's military tours on including the long tour of Afghanistan from 2007 to 2009 and other military training or duty assignments October 30, 2009 Plaintiff filed a retaliation Charge with the Dallas U. S. EEOC Charge Number 450-2010-00754 and received by U.S. mail his Right to Sue Letter on or about the 20th of January 2010, that was signed by Dallas EEOC Director Michael C. Fetzer on 19th January 2010. The Plaintiff has filed this case within the 90 day time limit upon receipt of his Right to Sue Letter.

114.    Defendant Allen was terminated for unrelated misconduct in 2008 while Plaintiff was on military leave in Afghanistan.

115.     Defendants Allen and Wilkerson alleged that Plaintiff had committed numerous violations of LISD Police policies.

116.    All allegations of which of which Defendants Allen and Wilkerson recommended Plaintiff for termination were and are false and fabricated in retaliation for Plaintiff's filing prior employment discrimination lawsuits against the Defendants and Plaintiff's military service (that will be amended later in this claim along with additional Title VII claims).      "

117.    Defendants Allen and Wilkerson recommended that Plaintiff Cornish be terminated for allegations of insubordination and  excessive force against students.

118.    Plaintiff was never terminated or discipline for any such violations recommended by Defendants Allen and Wilkerson that were levied against Plaintiff prior to Plaintiff's Afghanistan Tour from November 2007 and Plaintiff's return to work.

119.    Throughout Plaintiff's career with the Defendants LISD no matter what positive

accomplishments Plaintiff contributed to LISD, Defendant Allen always reminded Plaintiff that no one

like Plaintiff but they knew that Plaintiff knew how to do the job and that Plaintiff would stand up for

injustice.

120.    Plaintiff was always told by Defendant Allen that there was no disciplinary action placed in the

Plaintiff's personnel files and Plaintiff reported this to Defendant HRD Carroll and Defendant Young

that Plaintiff was shocked that on or about September 6, 2007  that Defendants Allen and Wilkerson

were pulling out fabricated discipline and even just allegations in an effort to terminate Plaintiff in

retaliation for Plaintiff's engaging in prior protective activities against the Defendants LISD. Defendants

Carroll, Young, Hill, Lewis and later Marable all were aware of the direct evidentiary statement of

Defendant Allen's (September 6, 2007 administrative leave letter) , disregarding the discrimination

complaints and hostile work environment complaints filed by Plaintiff and just went along just to get

along as LISD had done against Plaintiff in the past.

121.    Plaintiff was always told by Defendant Allen that there was no disciplinary action placed in the

Plaintiff's personnel files.

122.    On or about September 6, 2007, when Plaintiff was placed on administrative leave by

Defendants Carroll the Human Resource Director and Defendant Allen the Plaintiff in the presence of

Defendant Wilkerson and Plaintiff's witnesses Danny Lawson and William Cowley advised Defendant

Carroll that the Defendant Allen has always stated to Plaintiff that no discipline was ever placed in his

files. Defendants Allen and/or Wilkerson never contested this.

123.    In the presence of Plaintiff witnesses Lawson and Cowley Plaintiff advised Defendant Carroll

then that he believe that he was being retaliated against both for filing a discrimination lawsuit against

the Defendants and because of his military obligations.

124.    When Plaintiff hired on November 8, 2005 as a police officer with LISD Police Department

Plaintiff possessed:  Bachelor's Degree in Criminal Justice from Dallas Baptist University, an Associates

Degree in Liberal Arts (emphasis Police Science) from El Centro Community College, a Commission in

the U. S. Army, Certificate of Completion Army Military Police Officers basic and advance course,

military command experience, an Instructors Certification License from the licensing authority for

Texas Peace Officers, Texas Commission on Law Enforcements Officers Standards and Education

(TCLOSE), a Basic, Intermediate, Advance, and Master Peace Officers Certification from TCLOSE, over

16

20 years of law enforcement experience ranging from civilian jailer experience, police community

patrol, investigations of various offenses and arrests from theft to capital murder etc.

125.    Chief of Police Sam Allen introduced Plaintiff to his police staff telling the staff that Plaintiff had

successfully settled a discrimination lawsuit against the Defendants LISD and thus was hired.

126.    Plaintiff in 2006-2009 conducted numerous tours of military training and deployments in

support of the Global War on Terrorism. Plaintiff requests that the dates of deployment and military

leave do not hinder the statute of limitation because both the Title VII and retaliation plead in this case

(EEOC Charge #450-2010-00754 filed November 23, 2009, Right to Sue received on January 19, 2010).

Personal Harm: Plaintiff alleges On/about September 7, 2007, Defendants Chief of Police Allen,

Lieutenant Wilkerson, and Human Resource Director Pamela Carroll placed the Plaintiff on

administrative leave from his commissioned police officer position. From November 26, 2007, through

January 12, 2009, Plaintiff was on military leave – active duty in Afghanistan (long tour). Plaintiff

reported to Defendant Carroll that he would return back to work on April 10, 2009. Defendant Carroll

kept Plaintiff on administrative leave from the administrative leave Plaintiff was placed on prior to

Plaintiff's Afghanistan tour. On/about May 11, 2009 was ordered back to work by Defendant Carroll

the Human Resource Director for the Defendants who temporarily assigned Plaintiff under her.

Defendant Carroll stated to Plaintiff until they decided what they were going to do with Plaintiff.

Plaintiff had advised Defendant Carroll the same as he advised her prior to his Afghanistan tour that

the charges brought by Defendants Allen and Wilkerson were fabricated due to retaliation for Plaintiff

suing LISD for discrimination and that it was stated so in Defendant Allen's September 6, 2007, letter

that Defendant Carroll provided to Plaintiff placing Plaintiff on administrative leave.

127.    Plaintiff advised Defendant Carroll that he patiently awaited being returned back to his police

officer status or if the Defendants chose so an investigative position due to the fact that the

Defendants lacked a police officer with investigative experience.

128.    In July 2009, Plaintiff was assigned as the LISD Truancy Officer and it was discussed with

Defendant Carroll possibly that Plaintiff would be the LISD Police and LISD investigator.

129.    Plaintiff asked Defendant Carroll about removing the negative false retaliatory discriminatory

documentation from his files. Defendant Carroll advised Plaintiff that she would get with Attorney on

the matter, Defendant Carroll advised Plaintiff that the recommendations for discipline was null and

voided. Defendant Carroll stated that to police Department would maintain Plaintiff's police

commission. Defendant Carroll than congratulated Plaintiff for his new assignment and Plaintiff returned to his work area. Plaintiff was told that he would report to Carma Morgan as his immediate superior when Plaintiff returned from military leave in late July or early August 2009.

130.    Plaintiff immediately phoned Dallas Independent School District Police Lt Calvin Howard, Dallas Police Officer William Cowley, and CLEAT Attorney Rick Carter with the great news..

131.    Plaintiff's initial conversation with Defendant Carroll was that Plaintiff would retain his police credentials because Plaintiff was far the most experience and versatile police officer employed by the Defendants.

132.    When Plaintiff returned back from military leave in late July early August 2009, Plaintiff was assigned and placed in a lower level position as a civilian Truancy Officer a clear demotion and nothing as explained by Defendant Carroll during previous conversation. No reason was given for the demotion to this day. Plaintiff believe that this was continual retaliation that was put in place by Defendant Allen and Wilkerson.

133.    In July 2009, Plaintiff pursuant to review of his personnel files through Defendant Carroll but in the presence of Defendant Carroll's secretary Mary Woodberry, Plaintiff observed  printed emails communication between LISD Attorney McCollom discussing Plaintiff's return from active duty, it was apparent that Attorney McCollom and her office were not trying to advise the Defendants to rightfully employ Plaintiff according to the law Title VII and or USERRA (USERRA and additional EEOC charges will be amended in this complaint at a later date). Defendant McCollom was conspiring with he Defendants to further retaliate against the Plaintiff.

134.    Plaintiff also observed a printed email from Defendant Wilkerson to Defendant Young referencing that Defendant Wilkerson wanted to speak with Defendant Young about Plaintiff returning to work before Plaintiff returned back to work. This too evidence that Defendants have collectively engaged in conduct preventing Plaintiff from returning to his position as an LISD Police Officer because of employment discrimination and retaliation as stated throughout this complaint.

135.    Defendants historically denied Plaintiff any opportunities for job enrichment sponsored training.

136.    Defendants never paid for Plaintiff to attend any law enforcement sponsored training but did so to all other LISD Police Officer.

137.       Plaintiff in emails communicated to Defendant Allen that he was being slighted by not being sent to sponsored law enforcement training to include mandatory training to maintain his license.

138.       Plaintiff had to maintain his training to keep police credentials on his on time and his TCLOSE transcript reflect the same.

139.       Defendant Carroll was provided copies of military and Master Level Colleges courses( taken by Plaintiff without sponsorship of Defendants) by Plaintiff in 2009 to send to TCLOSE to be placed on Plaintiff's training transcript and in an email from Defendant Carroll the Human Resource Director she declined.

140.       On/about November 4, 2009, Defendants Carroll emailed Plaintiff and Defendant Wilkerson mailed Plaintiff (Certified U.S. Postage Mail Receipt #7006 0100 0005 2619 6159) the state governing body Texas Commission on Law Enforcement Officers Standards and Education F-5 Commission Revocation or Separation Form, separating Plaintiff's police commission from his employer LISD. The form was marked and signed by Defendant Wilkerson that Plaintiff left in good standing and it was due to Plaintiff's position being eliminated.

141.       Defendant Carroll emailed Plaintiff a copy of the same F-5 form that Defendant Wilkerson mailed Plaintiff (Certified U.S. Postage Mail Receipt #7006 0100 0005 2619 6159) which was the state governing body Texas Commission on Law Enforcement Officers Standards and Education F-5 Commission Revocation or Separation Form, separating Plaintiff's police commission from his employer LISD. The form was marked and signed by Defendant Wilkerson that Plaintiff left in good standing and it was due to Plaintiff's position being eliminated.

142.       Defendant LISD Board of Trustees are the governing authority that vote to approve and eliminate public safety positions within the Lancaster Independent School District to including the LISD Police Department.

143.       Police Officers positions within the LISD are public safety positions.

144.       Defendant LISD Board never approved the elimination of the Plaintiff's police position.

145.       Defendant Wilkerson mailed the F-5 Form to the Texas Commission on LAW Enforcement Officers Standards and Education (TCLOSE) as official notification of Plaintiff's position being eliminated.

146.    Defendant McCollom, Wilkerson, Carroll, Marable, and Young all knew Plaintiff's police position was not eliminated when Defendant Wilkerson falsified the state form, mailed it to TCLOSE and the Plaintiff.

147.    Defendants McCollom, Wilkerson, Carroll, Marable, and Young knew that the Defendants, LISD Board of Trustees never eliminated the Plaintiff's police position prior to November 4, 2009, as dated on the form submitted to Plaintiff by both Defendants Carroll and Wilkerson.

148.    Defendant McCollom, Carroll, Wilkerson, Marable, and Young knew that there were no LISD board minutes that showed that the Defendants LISD Board ever eliminated Plaintiff's police position that led to Defendants Wilkerson and Carroll forwarding Plaintiff and TCLOSE the false F-5 Form.

149.    Defendants Carroll and Wilkerson never to this date have correct the false F-5 document that was sent to Plaintiff and TCLOSE.

150.    Defendant Carroll during a tape recorded meeting with Defendant Marable, Attorney Driskell (administrative appeal attorney for Plaintiff), simply lied by stating that another or corrected F-5 Form was sent to Plaintiff.

151.    Respondents Reason for Adverse Action:  Plaintiff was informed by Defendant Carroll and former Chief Allen that Plaintiff was placed on administrative leave for numerous complaints.

152.    Plaintiff was never disciplined for any of the complaints regarding the administrative leave recommendations for termination of Defendants Wilkerson or Allen.

153.    Defendant Lewis never terminated Plaintiff employment.

154.    Discrimination Statement: Defendants retaliated against Plaintiff because Plaintiff had filed previous EEOC Charges and lawsuit against Lancaster ISD and other employers. Since Plaintiff's date of hire on November  8, 2005, Lancaster ISD has hired (2) other commissioned police officers who currently are employed as commissioned police officers and are far less experience than Plaintiff. The Officers are Duncan and Dyson. Plaintiff lost mandatory overtime, part time employment and other benefits due to not being commissioned.

155.    Defendant Allen on September 2007 when placing Plaintiff on administrative leave wrote, "Officer Cornish: On November 8, 2005, you were hired by Lancaster ISD Police Department in part to resolve a lawsuit you filed against the district. You were brought here by me with high expectations as well as with warnings from others that I would regret hiring you."

156.    The only prior lawsuit Plaintiff had filed against defendants LISD prior to this lawsuit was a Title

VII employment discrimination (Retaliation) lawsuit.

157.    Defendants McCollom, Hill, Carroll, Marable, Wilkerson, Brein, Young, and Lewis all knew that

Defendant Allen actins evidence direct discriminatory treatment towards Plaintiff that violated Plaintiff

rights guaranteed under federal law.

158.    Plaintiff could not trust no one within LISD to process his grievance complaints due to the

history of Defendant Allen, Carroll, Young, Lewis, Marable, and the yes the LISD Board in turning their

head or ignoring Plaintiff's legitimate notice of grievance.

159.    The September 6, 2007 administrative leave letter from Allen and Carroll to Plaintiff is direct

evidence of continual retaliation under Title VII imposed on Plaintiff by Defendants where all

Defendant were aware or should have been aware of the statement of Defendant Allen by way of their

position and the hostile work environment complaint filed by Plaintiff against both Allen and Wilkerson

in September 2007 4 to 5 months after Plaintiff requested to meet with Defendant Young on issues of

public concern retaliation, discrimination, harassment and other violations committed by Allen and

Wilkerson by way of the color of their office.

160.    Plaintiff's previous engagements in protective employment activities opposing employment

discrimination has been an issue and it is anticipated that the Defendants will bring these issues up

during trial that involved: EEOC charges and lawsuits involving Plaintiff's past employers (Lancaster

Independent School District,  Dallas Police Department, and Correctional Services Corporation),  past

potential employers (Dallas Independent School District on appeal before 5th Circuit Ct of Appeals,

Texas Department of Protective Services,  and Texas Department of Criminal Justice) that the

Defendants will bring these protective activities to the attention of the Court. The Plaintiff is prepared

to tell his side of the stories on each protective engagement some successful and some unsuccessful,

but all involved civil rights and/or federal laws and statutes involving Plaintiff individually as well as

part of a class of employees seeking redress from the U.S. Courts under the law.

161.    Violation of Plaintiff's rights under U.S. Code 1985 Conspiracy when Defendants individually and

collectively discriminated and or retaliate against Plaintiff because of Plaintiff's participation in legally

challenging employment discrimination by placing Plaintiff on administrative leave in an attempt to

force Plaintiff to resign because of the Defendants amicus towards Plaintiff for conducting such

activities.  Defendants the Board of Trustees, Former Superintendent Lewis, Former Police Chief Allen,

Interim Superintendent Marable, Human Resource Director Carroll, Acting Chief Wilkerson, Attorney

Hill, and Brein all knew or should have known of Plaintiff's protective activity based on their positions

of responsibilities and acted in commission or omission collectively and individually to violated

Plaintiff's rights under Federal statutes and laws.

162.    Violation of Plaintiff's rights under U.S. Code 1983 All Defendant imposed such conditions on

Plaintiff that violated Plaintiff's rights under federal laws and statues that a reasonable person would

have found their conduct pervasive ,arbitrary and capricious and would caused a reasonable person in

Plaintiff situation to leave and or fear termination

163.    In June 2007 Defendant Allen and Defendant Brein both conspired to violate Plaintiff's privacy

and slander Plaintiff after Plaintiff Cornish reported to Defendant Allen that Plaintiff requested to

speak with Defendant Young on matters of public concern, Allen had Brein a licensed student (for

school kids only) psychologist conduct a secret illegal psychological evaluation with the intent of

portraying Plaintiff with an anger management with school age kids

164.    Brein was not authorized to make such an assessment. Defendant Wilkerson and Allen had

placed Plaintiff in unsafe positions of responding to calls that involve two-man officer violence type

police incidents and/or calls and when Plaintiff utilized his experience, training and education in law

enforcement quell  the incidents Defendants used this to destroy Plaintiff years of positive work with

juveniles that included work that Plaintiff performed for Defendants in caring, training and teaching

juveniles in LISD Junior Police Academy, JROTC, fitness training.

165.    Defendants McCollom,  Hill, Lewis, Carroll, Young and Marable knew of Wilkerson, Allen, and

Brein's illegal motive and did nothing to remedy because Defendants wanted Plaintiff terminated

because Plaintiff engaged in protective activities against the Defendants and because Plaintiff was and

U.S. Army Reservist.

166.    Defendant Brein initiated the illegal psychological evaluation without Plaintiff's consent.

Defendant Brien never met with Plaintiff to even discuss such an evaluation.

167.    Defendants Allen and Wilkerson knew based on Plaintiff continual positive engagements and

interaction with the greatest resources of LISD the students and that Plaintiff only used reasonable

force when only necessary according to the law and policy. Defendant Wilkerson and Allen conducted

sham investigations against Plaintiff and Defendants Carroll and Young were made aware of the

missing and or lost documents to their sham investigations.

22

168.     September 4, 2009, , Defendant attorney Leslie McCollom lied to the Texas Attorney General

Office in writing that the evaluation that was conducted on Plaintiff was routine review on the

department when no other such evaluations were conducted and Defendant Brein was not qualified to

conduct such evaluation based on his experience, professional credentials and/or education under the

law.

169.     Defendant LISD had no policy in effect that routinely or in any manner permitted Defendant

Brein to conduct any written unauthorized or unconsented psychological evaluation on any police

officer within LISD and Defendants McCollom, Young, Marable, Lewis, Hill, Carroll, Wilkerson and Allen

knew this was illegal are should have known based on their positions.

170.     Defendant Brein released the illegal psychological evaluation without Plaintiff consent and

knowledge. Defendant s knew of this illegal activity or should know based on the fact that the

documents were in Plaintiff's personnel files that were released to Plaintiff by Defendant Carroll after

Plaintiff asked to review his files in June 2009, after Defendant Marable stated that she had reviewed

all Plaintiff's files and that Plaintiff would never be a police officer for Lancaster Independent School

District following Plaintiff's return from his military tour from Afghanistan.

171.     Defendants failed to train or properly train Brein as to his duties and responsibilities as a

student psychologist and knew or should have known that Defendant Brein was conducting an

improper assessment of Plaintiff for pretext purposes.

172.     Bad Job Reference Defendants Allen, Wilkerson, and Carroll knew that Plaintiff had made

application for employment with Dallas Independent School District but released to Plaintiff's

Confidential Settlement Agreement to Dallas Independent School District.

173.     Human Resource Director Carroll failed to process Plaintiff complaints of employment

discrimination only seeking to fire Plaintiff or get Plaintiff to resign.

174.     To ensure that Plaintiff pleads his cause under the SOLDIER SAILOR ACT and ask that the Court

request that the Court allows this lawsuit to be initiated under the Soldier Sailor Relief Act by

considering all times surrounding this lawsuit that involved Plaintiff Cornish conducting military

training, duties etc., in support of the Global War on Terrorism and a considered time for Plaintiff

readjusting to the society and not rule that Plaintiff has exceeded the statue of limitation so that

justice may be served.  Plaintiff expects to amend this complaint with additional EEOC, U.S. Code 1983,

and U.S. Code 1985 violations imposed on Plaintiff by the Defendants.

175.      Plaintiff was on active duty from  February 2007-April 2007, July 13-30 2007, August 8-22 2007, 10 days in late September  and early October 2007, November  26, 2007 – January 12, 2009, February 2009 (10) Days, May 2009 (10 Days), July 2009 (22) days, and October 26-30 2009.

176.      Plaintiff have suffered injuries and assaults on the job while performing his duties the injuries were sustained while restraining disruptive student:

177.      Defendant Allen slapped Plaintiff on the back of the head in January 2007, while at the LISD High School in the hall way when he introduced Plaintiff to Lancaster City Police Chief. Defendants Young and Carroll were informed by Plaintiff of this incident to no avail.

178.      Plaintiff was attacked by student Darius Mayberry on August 3, 2007, at LISD Junior High  while breaking up a school fight (Dallas County Juvenile Cause No. JD-67168-X).

179.      Plaintiff sprained his right wrist breaking up a fight in April 2007 at LISD High School  that involved Student Marquis Montgomery who during the months from April - June  2007 created nearly daily disruptions at the high school before morning intake.

180.      Plaintiff is aware of both Defendant Allen and Wilkerson prior terminations from other employers and that the Defendant never took any action against them for any protective activity that they may have been involved surrounding their previous employers; however this was never the case with Plaintiff Cornish. The Defendant Lancaster Independent School District policy has been to employ the Plaintiff out of necessity to settle a Title VII Retaliation claim that Plaintiff filed against the Defendants Lancaster Independent School District that was resolved by way of Court ordered mediation on November 20, 2005 that resulted in November 8, 2005 hiring of Plaintiff.

181.      Defendant Allen went from the statement he presented to Plaintiff when LISD and former Defendant Superintendent Larry Lewis were trying to settle the case on the date of the Settlement, "Harold lets settle this case so that we can put you to work because we need your experience, education and training."  Informing my coworkers and LISD administrators thereafter, "Harold Cornish sued the LISD for discrimination," "Harold nobody likes you but they know you can do the job and the others including LT Wilkerson can't perform at your level ," "Harold you are filing grievance just as you did with Dallas Police Department (DPD) and the juvenile correction department ,"  other comments made to Plaintiff nearly daily referencing Plaintiff history of engaging in protective activities regarding employment discrimination to finally on September 6,  2007, Plaintiff was placed on administrative leave and was never disciplined for that which he was placed on administrative leave for.

182.        Allen was encouraging Plaintiff to file grievances and for Plaintiff to petition board members about his public safety budget being slashed by Dr. Lewis each year. Plaintiff reported to Defendant Young during the September 2007 hostile work environment meeting that the Defendant Allen had been continually making remarks about Plaintiff's status as an army reservist and Plaintiff's past engagement in protective activities related to his employment with the Defendants LISD and past employers. Plaintiff reported to Defendant that Defendant Allen assaulted Plaintiff by slapping Plaintiff on the back of the head and nearly hitting Plaintiff in the face on two different occasions and that Plaintiff sought initially to speak with Allen on these but Allen refused to discuss these issues and that Plaintiff was now putting Defendant Young and the district on notice of a hostile work environment.

183.        Plaintiff reported this to Assistant Superintendent Defendant Eugene Young (the superior of Allen) during Plaintiff's hostile work environment complaint meeting with Young in September 2007. Defendant Carroll was made aware of this by Plaintiff prior to the meeting with Defendant Young and afterwards. Plaintiff reported to Defendant Young that both Defendant Allen and Wilkerson were limiting officers from working overtime, off-duty and that they were not present in the morning for duty due to suspected working part time jobs that were at the same time they were being paid by LISD. Defendant Young and Defendant Carroll later conducted minor review into only one day finding that both Allen and Wilkerson were double dipping and discipline Allen (terminating his employment) but not Wilkerson. Defendant only conducted an investigation surrounding one because they protecting both Allen and Wilkerson from potential criminal charges of fraud of public funds by double dipping which is they were receiving pay from both Lancaster Independent School District and Red Oak Charter School for duties performed at the same time. Plaintiff Cornish forwarded emails to Defendant Allen requesting to meet with Defendant Young about matters of public concern and Allen attempted to solicit from Plaintiff what the reason he requested to speak to Defendant Young but Plaintiff only response to him were "Matters of Public Concern and Safety." Defendants were place notice of discrimination and retaliation by Plaintiff's written and oral complaints to Assistant Superintendent Young and HR Director Pamela Carroll in September 2007, following Plaintiff's return from active duty nearly daily or weekly and Defendant Carroll never sought to resolve are act on Plaintiff's complaints.

184.        Around January 2007 and after returned from a 9 week military training tour , Plaintiff observed that Defendant Allen and Wilkerson were never at work during intake morning process  and informed

Defendant Young of this some 4 to 5 months later after Young finally met with Plaintiff on his hostile work environment complaint in September 2007.

185.     In the week of October 26-30 while Plaintiff was on military leave he appeared in the office of the Defendant Carroll for reviewing an open records request referencing all documents the Defendants released to the Dallas Independent School District whom the Plaintiff was litigating. Defendant Carroll's Secretary Mary Woodberry showed Plaintiff several boxes of documents that contained documents surrounding the Plaintiff's personnel records and the lawsuit which Plaintiff settled with the Defendants and Plaintiff observed a copy of the Confidential Settlement Agreement date November 20, 2005 and the Court Order from HONORABLE STATE DISTRICT JUDGE JANICE WARDER ordering the Expunction of certain documents that pertain to the Plaintiff. The Plaintiff in 2002 informed both former LISD Police Chief Carl Headen and former LISD Police Lieutenant Ryan Getty that the order was subject to the expunction but was still illegally maintained by the Defendants. In June 2009, Plaintiff informed Defendant Carroll the Human Resource Director that the settlement of the lawsuit was confidential and that it should remain the same. Plaintiff also informed the Defendant Carroll that the expunction order granted by Judge Warder he suspected was still being held in his file for suspected illegal reasons. Defendant advised that she would look into the matter but the Defendant instead released the documents to the Dallas Independent School District who made reference to the documents in the court records prevent Plaintiff from obtaining a job with the Dallas Independent School District (DISD).

186.     Defendants Wilkerson, and Carroll conspired to take Plaintiff's state peace officer's commission away from him by falsifying a government document by submitting to Plaintiff Cornish and the state licensing authority Texas Commission on Law Enforcement Officer Standards and Education on or about November 4, 2009, a Separation Document F-5 Form stating that Plaintiff's police/peace officer's position was eliminated when the board minutes shows that Plaintiff's position and/or no police officer (police level) position was ever eliminated. Defendants Young and Marable knew are should have know that this took place and that it was illegal. Plaintiff informed the Defendant Human Resource Director Carroll, Assistant Superintendant Young, Acting Chief Wilkerson, and the LISD Board of Directors of this illegal act.

187.     September 2007 , Defendant Young was informed by Plaintiff Cornish during the meeting with him regarding Cornish's Hostile Work Environment Complaint that both Defendants Allen and

Wilkerson had been unavailable during the early hours of work due to possibly working extra jobs on LISD time creating safety issues due to numerous disruptive fights at the high during intake. Defendant Young was informed that Plaintiff suspected that the Defendants were working part time job during duty hours but restricting officer's part time work.

188.    . December 2006 and January 2007, rookie LISD Police Officer Duncan advised Plaintiff that he was told by both Defendants Wilkerson and Allen not to work with Plaintiff Cornish, and no reason was given. Between January 2007 and August 2007,while Plaintiff Cornish was on mainly of  military leave, young rookie  LISD Police Officer Corey Duncan phoned Plaintiff Cornish by way of cell phone advising Cornish on several different occasions that both Defendant  Allen and Wilkerson ordered him not to work with Plaintiff Cornish. Defendant Allen advises Plaintiff Cornish to stay away from rookie officer Duncan, and Plaintiff complied with the best of his ability. Around early January 2007 Plaintiff had a conversation with Chief Allen regarding the training of rookie officer Duncan and Defendant Allen advised Plaintiff Cornish that Plaintiff Cornish was the only person qualified to train Duncan. Plaintiff Cornish reminded Defendant Allen that Plaintiff had advised Defendant Allen that it would be a challenge to train Duncan in law enforcement due to the limitation of the other police staff and that it was incumbent on Defendant Allen to ensure that Duncan was properly trained, because Duncan was the first true rookie police officer hired under Defendant Allen's administration and his training will reflect on Chief Allen and the department.  While Plaintiff was on military leave rookie Officer Duncan advised Plaintiff in person and by phone on numerous occasions that both Defendants Allen and Defendant Wilkerson stated to him that Plaintiff Cornish was the only police officer on the LISD Police Department qualified to train Officer Duncan. Duncan would ask numerous rookie type questions regarding the use of force and Plaintiff Cornish would answer according law, policy, experience etc., and encourage Duncan to solicit answers from both Defendants Allen and Wilkerson.

189.    In early 2009 following Plaintiff's Cornish return from long tour active duty, LISD Police Officer Duncan in person and by phone told Plaintiff Cornish that LT Wilkerson around November or December 2008 who was then the Acting Chief of LISD Police Department advised told him that if Plaintiff Cornish returned back to work on the LISD Police Department that Duncan would be fired. Plaintiff Cornish attempted to get Officer Duncan to commit this statement in writing by emailing him around August 2009; however, Duncan called Plaintiff by phone and restated what he had previously stated to Cornish. Duncan asked Cornish not email him at work on those matters.

190.      Defendant Lewis Defendant as former Superintendent, Defendant Marable as the Interim

Superintendent for the Lancaster Independent School District (LISD) was aware of the Plaintiff

Cornish's hostile complaint of discrimination under Title VII (past protective activity)and based on

Plaintiff Cornish's association and obligations as a U.S. Armed Forces Military Officer Reservist and

direct evidence of discrimination of retaliation Of the administrative leave letter generated by

Defendant Allen , Wilkerson, Young, Carroll and investigator Hill, that came after being placed on

notice by Plaintiff of a hostile work environment and or discrimination complaint (Emails faxes or

written complaints of June 14-19, 2007 to Young where Carroll is involved). Plaintiff also placed

Defendants on notice with written communication , to Allen, Young and Carroll on June 2006, Jan-Feb

2007, September 5, 2007, September 6, 2007, September 13, 2007 May 11, 2008, De3cember 2009, .

Defendant Marable and Defendant McCollum continued the adverse discriminatory action put in play

collectively and individually by Lewis, Young, Allen, Carroll, Wilkerson, and Hill all whom under who

worked for the Defendants in some official capacity willfully conspired to not take any action against to

substantiate Plaintiff's claims therefore, Hill conducted a sham investigation and never contacted

Plaintiff for an interview. The same standard of a hostile work environment for gender discrimination is

applied to all hostile work environments and no care or reasonable action terminate any further

amicus towards Plaintiff was conducted due to the sham investigation conduct by Defendants attorney

Defendant Hill. The Defendants then later tried to insulate themselves by alleging attorney client

privilege when Plaintiff the victim request to review the investigation on December 22, 2007 and have

been denied since.

191.      Defendants Computer technology Manager/Director Alan Steele during September and

October of 2009 informed Plaintiff that all emails are maintained on the LISD computer system and can

be retrieved.

192.      In 2007 prior to Plaintiff's military long tour, Plaintiff advised Defendant Carroll by way of

writing to maintain copies of all documents pertaining to Plaintiff Cornish.

193.      The Appendix attached to this complaint Plaintiff affirm that they are true and correct copies of

what they purport to be.

194.      Where the name of Defendant Leslie McCollom appears in this claim the name of John Peter

Lund is to sued in this claim also who are both legal representatives for the Defendants for the same

law firm that cause harm to Plaintiff. .

28

195.                                           PRAY FOR RELIEF

196.        But for the offending events in question, Plaintiff suffered injury. Plaintiff sues his former

employer and the Defendants in the following respects, to wit:

197.        Compensatory damages (documented severe embarrassment, fear, anxiety, loss of sleep, and

emotional distress) associated with the discriminatory/retaliatory treatment Defendants subjected

Plaintiff to since November 2005 and began taking adverse action that has continued to the present.

198.        Compensation for Assault and Battery when Chief Allen in January 2007 slapped Plaintiff on the

back of his head while introducing Plaintiff to the City of Lancaster Police Chief. Embarrassing Plaintiff

both personally and professionally.

199.        Actual damages including psychological counseling since 2006 for subjecting Plaintiff to a

constant hostile work environment because Plaintiff's previous engaging in protective employment

activities, reporting Defendants Wilkerson, Carroll, Marable, and Young for falsifying the Plaintiff's F-5

Texas Commission On Law Enforcements Officers Standards and Education separation of commission,

and because of Plaintiff's filing labor department complaints alleging USERRA violations against the

Defendants.

200.        Exemplary damages directed against the Defendants.

201.        Pre-judgment and post-judgment interest.

202.        Reasonable legal fees (for any legal contractual agreements), expert fees, and cost to litigate

this claim.

203.        Monetary damages for loss of past (overtime) and future wages, pension, mental anguish, and

employability.

204.        Punitive Damages for loss of professional reputation and professional embarrassment.

205.        Declaratory judgment relief in the form of a declaration that conduct in question violated

Plaintiff's federal, constitutional, and/or civil rights and that functioning, and negative effect on

Plaintiff future employment.

_____                    _April 19, 2010_
                                                              DATE
Pro se Plaintiff Harold B. Cornish
601 Nora Lane DeSoto, Texas 75115
Primary Ph. 972-352-9187
Secondary Ph. 972-230-3775
Email Address: hcbg@prodigy.net

29

Plaintiff Harold B. Cornish Appendix of documents to Plaintiff's initial complaint against Lancaster Independent School District (LISD)

| Appendix # | Date | Type of Copied Document (S) | Number of Pages |
|---|---|---|---|
| 1 | 1/19/2010 | Plaintiff EEOC Right To Sue Letter of Charge #450-2010-00754 against Defendant Lancaster Independent School District | 1 |
| 2 | 11/23/2009 | Plaintiff EEOC Complaint of Charge #450-2010-00754 against Defendant Lancaster Independent School District (LISD) | 1 |
| 3 thru 4 | 11/4/2009 | #3 Certified Mailed #7006 0100 0005 2619 6159 Envelope from Lancaster Independent School District Police Department that contained #4 Plaintiff's F-5 Form Seperating Plaintiff's police commission from LISD PD signed by Defendant Keith Wilkerson | 2 |
| 5 thru 6 | 9/6/2007 | Notarized statement of former Defendant LISD former Police Chief Sam Allen to Plaintiff Cornish placing Plaintiff on administrative leave | 2 |
| 7 | 9/6/2007 | Administrative Leave Letter from Defendant LISD former Superintendent Larry Lewis to Plaintiff Cornish | 1 |
| 8 thru 10 | 9/5/2007 | A signed email from Plaintiff Cornish from the email account of LISD Police Officer Cory Duncan to Defendant Allen | 3 |
| 11 | 9/21/2007 | A certified mailed Letter USPS CERT #70060100000526223411 from Defendant Allen to Plaintiff | 1 |
| 12 | 1/10/2007 | An email from Defendant Allen to former LISD Media Relation Manager Teri Wilson and copied to Plaintiff | 1 |
| 13 thru 18 | 11/28/2007 | A Fax from Plaintiff Cornish to LISD H/R Director Defendant Carroll of Plaintiff's positive impact as an LISD Police Officer | 6 |
| 19 thru 20 | 9/13/2007 | Email From Plaintiff Cornish to Defendant Carroll regarding hostile work environment within LISD | 2 |
| 21 thru 22 | 6/19/2007 | Stream of Emails from Plaintiff to Defendant Carroll regarding Plaintiff's discrimination grievances | 2 |
| 23 | 6/14/2007 | Email from Plaintiff Cornish to Defendant Carroll regarding Plaintiff's discrimination grievance | 1 |
| 24 thru 25 | 10/19/2007 | Emails between Defendant Carroll, Dexter Caston and Plaintiff regarding Plaintiff's military orders | 2 |
| 26 thru 28 | 9/4/2009 | Letter from Defendant McCollom and John - Peter Lund and an exhibit 1 to the Texas Attorney Generals Office and copied to Plaintiff, Leatrice Green and Defendant Carroll | 3 |

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| Harold B. Cornish<br>601 Nora Lane<br>Desoto, TX 75115 | From: **Dallas District Office**<br>207 S. Houston St.<br>3rd Floor<br>Dallas, TX 75202 |

☐   *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 450-2010-00754 | Janet V. Elizondo,<br>Deputy Director | (214) 253-2852 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

_____     _____
         Michael C. Fetzer,            (Date Mailed)
           Director

cc:   **Leslie McCollom**
**Attorney at Law**
**808 W. Avenue**
**Austin, Texas 78701**

CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See enclosed Privacy Act Statement and other information before completing this form.

☐ FEPA

☒ EEOC     450-2010-00754

Texas Workforce Commission Civil Rights Division     and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Mr. Harold B. Cornish | (972) 230-3775 | 09-24-1961 |

| Street Address | City, State and ZIP Code |
|---|---|
| 601 Nora Lane, Desoto, TX 75115 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| LANCASTER INDEPENDENT SCHOOL DISTRICT (POLICE) | 500 or More | (972) 218-1400 |

| Street Address | City, State and ZIP Code |
|---|---|
| 422 S. Centre, Lancaster, TX 75146 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **09-07-2007**   Latest **11-04-2009**
☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

PERSONAL HARM: On/about September 7, 2007, I was placed on administrative leave from my commissioned police officer position. From approximately November 26, 2007 through January 12, 2009, I was on military leave - active duty in Afghanistan (long tour). I reported back to work on/about May 11, 2009, and was temporarily assigned to the HR Director. In August 2009, I was assigned and placed in a lower level position as a civilian Truancy Officer. On November 4, 2009, my police commission was no longer carried by Lancaster ISD.

RESPONDENT'S REASON FOR ADVERSE ACTION: I was informed that I was placed on administrative leave due to numerous complaints. When I returned from active duty, I was advised that my position as a police officer had been eliminated "with officer in good standing". I was further advised that my commission would no longer be carried by Lancaster ISD in my current position of civilian Truancy Officer but no reason was provided for taking this action.

DISCRIMINATION STATEMENT: I believe I was retaliated against because of having filed a previous EEOC charge and lawsuit against Lancaster ISD and other employers. Since my date of hired in November 2005, Lancaster ISD has hired two (2) other commissioned police officers who are currently employed as commissioned police officers - Officer Duncan and Officer Dyson. I have lost many privileges and benefits as a result of not being commissioned.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT *(signature)* Harold B. Cornish |
| Nov 23, 2009 *Date*     *(signature)* Harold B. Cornish     *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* 11/23/09 *(signature)* Angella Newman EEOC Representative |

2

U.S. POSTAGE
PAID
LANCASTER, TX
75146
NOV 04, '09
AMOUNT

**$5.10**
00039883-11

75115

CERTIFIED MAIL™

7006 0100 0005 2619 6159

Lancaster ISD Police Dept.
814. W. Pleasant Run Rd.
Lancaster, TX. 75146

Mr. Harold B. Comish
1001 Nora Lane
Desoto, TX. 75115

W NS

75115+5228

3




# TEXAS COMMISSION ON LAW ENFORCEMENT
## OFFICER STANDARDS AND EDUCATION
6330 U.S. Highway 290 East, Suite 200
Austin, Texas 78723
Phone: (512) 936-7700
http://www.tcleose.state.tx.us

## F-5   REPORT OF SEPARATION OF LICENSEE
### LICENSEE INFORMATION (Occupations Code 1701.452)

| 1. First Name HAROLD | 2. M.I. B | 3. Last Name CORNISH | | 4. Suffix (Jr., etc.) |
|---|---|---|---|---|
| 5. TCLEOSE PID 45662 | 6. Date of Birth 09/24/1961 | 7. Home or Permanent Mailing Address 601 NORA LANE | | |
| 8. City DESOTO | 9. State TEXAS | 10. Zip Code 75115 | 11. Phone Number 972-230-3775 | |

**12. APPOINTMENT(s)  (Check all that apply)**

| 13. TCLEOSE Agency Number 113902 | 14. Appointing Agency Lancaster ISD Police Department |
|---|---|

X Peace Officer    ☐ Reserve    ☐ County / Contract Jailer    ☐ Medical Corporation P.O.    ☐ Public Security Officer

**15. DESIGNATION OF SEPARATION:** (Check only one).     **(Report in 7 business days Occupation Code 1701.452(a))**

16. Date Appointed: <u>11/08/2005</u>     17. Separation Date: <u>09/21/2009</u>

### Honorably Discharged
☐ Retired in good standing
☐ Resigned in good standing to pursue non-L.E. career
☐ Resigned in good standing to pursue L.E. career
☐ Killed in the line of duty
☐ Died while in good standing with the agency
☐ Disabled while in good standing, unable to perform duties
X Position was eliminated, with officer in good standing

☐ Terminated at will. (must attach explanation)
☐ Transferred from regular officer to reserve officer
☐ Transferred from reserve officer to regular officer
☐ Transferred from peace officer to jailer
☐ Transferred from jailer to peace officer
☐ Separated as a result of changes in leadership of L.E. agency or local govt.
☐ Separated from the agency subsequent to loss of a public election

### General Discharge
☐ Retired or resigned while under investigation for an administrative violation and after the officer was advised in writing of the investigation (must attach a written explanation of the alleged administrative violation, including a copy of the policy or rule)
☐ Retired or resigned while under investigation for a criminal violation(s) and after the officer was advised in writing of the criminal investigation. (must attach a written explanation of the alleged criminal violation, including the section of the law)
☐ Retired or resigned after receiving notification of pending disciplinary action, up to and including termination for an administrative violation. (must attach a written explanation of the alleged administrative violation)
☐ Failed to complete a field training program
☐ Failed to complete agency probation period
☐ Failed to complete required training under rule 217.11
☐ Failed to complete TCLEOSE licensing requirements
☐ Deceased while under investigation
☐ Retired or resigned through mutual agreement with the governmental entity and agency ☐ is eligible ☐ is not eligible to reapply
☐ Terminated for an administrative violation(s) other than truthfulness or insubordination (must attach violation and copy of the policy or rule)

### Dishonorably Discharged
☐ Retired or resigned in lieu of termination for a criminal offense(s) (must attach an explanation of the criminal law being investigated)
☐ Terminated for a criminal offense(s) charges filed (must attach contact information for court of record or district attorney's office)
☐ Terminated for a criminal offense (no charges filed after review with the district attorney's office)
☐ Retired or resigned in lieu of termination for an admin. violation(s) of truthfulness or insubordination (must attach a copy of the policy or rule)
☐ Terminated for an administrative violation(s) of truthfulness or insubordination (must attach violation and copy of policy or rule)

**18. I, chief administrator or designee, attest that this is a true and accurate explanation of the circumstances under which this person resigned or was terminated.**

A copy of this F-5 was provided to the person as required by Occupations Code 1701.452(d), in 7 business days by:

☐ Hand delivery on _____
                        Date

X Certified mail on <u>11/04/2009</u>
                        Date

Keith Wilkerson/Acting Chief of Police

_____
Agency Administrator or Designee (Type or Print)          Signature     #801     11/04/09     Date

4

*Nothing Is More Important Than Protecting Our Children!*



Officer Harold Cornish
601 Nora Ln.
DeSoto, Texas 75115

Officer Cornish:                                                          

On November 8, 2005 you were hired by the Lancaster ISD Police Department, in part to resolve a lawsuit you filed against the district. You were brought here by me with high expectations as well as with warnings from others that I would regret hiring you. This was a chance for you to get your career back on track and an opportunity for the district to gain an experienced, educated police officer.

However, starting on December 16, 2005 the first complaint was brought against you for failure to respond to assist another officer.

January 30, 2006 you were reported for unsatisfactory work quality, not being at assigned post in the AM and not responding immediately to a dangerous situation. (Student fight)

March 10, 2006 you were reported for failure to follow instructions and being late for a staff meeting. Officer Cornish you displayed extreme insubordination towards a supervisor.

February 2, 2007 you were reported for a use of force complaint from a Lancaster High School student, not calling for backup and not submitting required reports.

May 17, 2007 yet another use of force complaint was brought by another Lancaster High School student.

May 22, 2007 Lt. Wilkerson counseled you for not being in a specific location after you were given a direct order.

May 23, 2007 you arrived late for a staff meeting and were very argumentative, agitated, hostile, and disruptive and again showed extreme insubordination to a superior.

Lancaster ISD Police Dept /814 W. Pleasant Run Rd/ Lancaster, TX 75146
Chief Sam Allen/972.218.1648                                          5

*Nothing Is More Important Than Protecting Our Children!*

Officer Cornish you had the opportunity to respond to these allegations and you did, displaying a good degree of anger in your writings, as you also do when interacting with others.

Officer Cornish the goal of this department is to support the students and staff in an effort to keep them safe. The approach you have used in dealing with these students creates a climate of tension and defensiveness, and in doing so the type of behavior you display when interacting with the students and staff places an undue burden on a small police department by investigating the complaints and disrupting the learning and training schedule.

With this in mind and the documents attached, I am suspending you from duty effective September 6, 2007.

Sincerely,

Harold Cornish  9-6-2007

This Document has been (Fabricated)
generated following my
Request to Report unsafe
+ hostile management
within LISD PD.

Sam Allen, Chief of Police
Lancaster ISD Police Department

Darlene Sanford
9.6.07

Lancaster ISD Police Dept /814 W. Pleasant Run Rd/ Lancaster, TX 75146
Chief Sam Allen/972.218.1648

6



Larry D. Lewis, Ph.D.
Superintendent

September 6, 2007

Mr. Harold Cornish
LISD Police Dept.

Dear Mr. Cornish:

Effective September 6, 2007, you will be placed on administrative leave with pay based upon allegations of potential misconduct, which are currently being investigated. Please understand that this letter does not indicate any disciplinary action on the part of the district. This is strictly an action taken during a pending investigation, and will not affect your status with the district.

During investigations, the district finds that it is often best for those involved to be removed from the situation temporarily, in order to expedite the investigation. Please leave a telephone number with Ms. Pamela Carroll, Director of Human Resources at which you may be contacted during the day.

Attached are copies of complaint.

If you have any questions or concerns, please contact me.

Respectfully,

Larry Lewis, Ph.D.
Superintendent

I acknowledge receipt of this letter.

_Harold B Cornish_ _9/10/2007_    972-230-3775
Signature            Date          972-352-9187
                                   Phone Number

C:    Director of Human Resources

Lancaster I.S.D.        422 S. Centre Avenue        Lancaster, Texas 75146
        Phone 972-218-1400          FAX 972-218-1401

7

## Cory Duncan

**From:**    Cory Duncan
**Sent:**    Wednesday, September 05, 2007 6:21 PM
**To:**    Sam Allen
**Cc:**    'hcbg@prodigy.net'
**Subject:** Your Promise to Fire Harold Cornish

Chief,

I have requested numerous times to speak with Assistant Superintendent Young to no avail. You have encouraged me to file grievances (one of which is on race) and

make open records requests, regarding raises etc; however, when I asked questions, and made open records requests regarding documents surrounding these matters,

that are of public interest and safety, you have verbally stated to me, "I'm tired of this shit Harold, you making open records request, I have to spend time gathering this

information when I could be doing other things." This is a matter of free speech. You tell me that I am disruptive but you have discouraged officers from asking questions

about overtime (when I have been the only one that has defied your demands of not submitting overtime sheets for legitimate overtime worked due to your constant verbal

demands that you promised Dr. Lewis that you would submit and/or cut down on overtime), arrest procedures, and even making it Mandatory for us to work petition drives

for the BOND campaign which is illegal in every sense. You have stated over and over to me that my military duties are voluntary and that I am never here because of my

duties and obligations. You took up my company phone, shut down my email when I went on military leave, but failed to do the same when others went on leave. You

contacted an official regarding the confiscating of my credentials prior to my leaving on military leave and was advised that you could not do it, you claimed that you are

prior military; therefore, you should be aware of this. There has been no training in the use of force, as well as many other matters, and today you stated to me that you

want my resignation because you stated that I have been disruptive or you will conclude your investigations and terminate me. You have ordered officers to confront

students in the hall ways and suspicious activity and I have complied with your demands. I have advised you of the state of confusion that the high school is in and

requested to work the junior high to no avail, and each time the assignment was changed I had to exercise reasonable professional judgment in protecting the safety of

students and or teacher without any training from you are the administration. You ordered me not to work with a young officer Duncan for no apparent reason because, this

was long after I emailed you and advised you that it was important for you to ensure that he be properly trained (no documents exist to show that he was trained properly)

because he was the first untrained police officer that you have hired. I advised you and LT Wilkerson that the practice of open verbal criticism of Officers in the presence of

8

other officers. You on several occasions threaten openly that officers would not be working for you by the beginning of this school year, in particular Foster and Thorne

whom you never stated a reason why. I advised you in private that this was inappropriate on several occasions and could result in civil litigation but you always responded,

"Harold, I can do it because they are AT WILL EMPLOYEES!" You characterized your staff as the following:

LT Wilkerson – "He is inexperienced, uneducated, not where you are at Harold and I am trying to get him there."

Officer Gilliam – "Watch him Harold he will lie, don't know a Damn thing."

Officer Thorne – "Harold she can't be taught anything, she will make a good security guard and I want to fire her."

Officer Foster – "Harold he is fat overweight and I am going to fire him."

Officer Duncan – "He's a rookie and we don't have the time to train him.

Officer Austin – "Harold he don't know a Damn thing, screwed up the Katrina Stephenson investigation that you had to straighten out an investigation that could have

embarrassed this department."

Public Safety Officer Johnson – "Harold he is an alcoholic and neither he nor Gilliam wants you here." (I have previously informed you that I smelled alcoholic beverage

dissipating from Officer Johnson during duty hours.)

Superintendent Larry Lewis – "Harold the man does not like police officers."

Officer Cornish – " Harold, I told Dr. Lewis that you would only be with us for a year in a half before you move on. Harold nobody likes you but they know that you can doe

the job, I know that you can do the job. Harold I have put no complaints or discipline in your file. Harold the JPA Coordinator's position is a Coordinator position, it's in the

policy and provides a stipend.  Harold you need to get the other officers to file a grievance on pay. Harold you need to help Austin write the grievance on pay, I can't get

involved, we never had this conversation."  Harold Eugene Young has been saying that he believes that I am the person who has been putting you guys up to filing

grievances on pay. Harold, I do not believe that the grievance should be about race just on the pay issues."


Chief Allen, I have done nothing wrong but exercised free speech and expression by making open requests, asking legitimate questions, and filing legitimate grievances

(the on pay I have been told has lead to equal pay of Black Officers that were paid historically less than the only White Officer on the Department), should you decide to

terminate me I will appeal the termination based on retaliation and I will again have the district in court on a civil rights violation and possible criminal matters.

You have threaten my lively hood because I have questioned you on matters that affect public interest. I have advised you in the past on several different occasions that

any superior can make any subordinate look bad if he chooses to do so.

9

I will put this in the hand of whom I believe needs to have this document.

Harold Cornish    9/05/2007

Place this in my Files

10

*Nothing Is More Important Than Protecting Our Children!*



September 21, 2007
USPS CERT#70060100000526223411


Officer Harold Cornish
601 Nora Lane
DeSoto, Texas 75115


While on administrative leave and until a disposition has been made on your
investigation you are to report to duty by telephone each working day by 8:00am
Monday through Friday, excluding school holidays.  The hours you will be
available to the LISD Police Department are from 8:00am until 5:00pm.  You will
have a designated lunch hour from 12:00am until 1:00pm.  You will phone in to
the LISD Police Department, 972.218.1648, by 8:00am with a phone number you
can be reached at.

If you have Military orders, pending or otherwise, you will need to forward them to
me.  You will also need to provide me with unaltered copies of all Military
assignments from November 8, 2005  to present.  These documents need to be
provided to me by September 28, 2007.



Best regards,

Sam Allen/Chief of Police




Cc:  Pam Carroll/Director of Human Resources
     Eugene Young/Assistant Superintendent
     Cindy Hill/Attorney at Law

**Harold Cornish**

**From:**    Sam Allen
**Sent:**    Wednesday, January 10, 2007 5:53 PM
**To:**      Teri Wilson
**Cc:**      Harold Cornish; Eltoro Foster
**Subject:** Junior Police Academy


Teri,

We have a youth growth on the middle school and the High School campus that our Board members do not know about. This group collectively represents about 60 of our students.

Junior Police Academy motivates young people to be outstanding citizens through law enforcement education. An outgrowth of community policing, JPA transforms the traditional role of the police officer into one of mentor and friend, while encouraging our young citizens to be partners, not adversaries, in building safer schools and communities.

Tomorrow's Leaders

Targeting middle school and high school students, the program is a police academy for young people. While our graduates are not police officers, they are the community leaders of tomorrow -- instilled with an appreciation and respect for law enforcers and their role in society.

I am requesting that the Middle School group lead us in opening of the next board meeting and be recognized by the Board for there commitment and participants in community involvement from Bond drive get out to vote, Thanksgiving Dinner Drive and feeding over 30 families in Christmas Dinner Drive.

Chief Sam Allen

Lancaster I S D Police Depart.

814 W. Pleasant Run Road

Lancaster Texas 75146

972 218 1653 (o)

469 261 8889 (c)

12

ATTN: LISD H/R DIRECTOR Pamela Carroll  t
972-218-1401


DATE: Nov. 28, 2007


FROM: Captain Harold B. Cornish
UNITED STATES ARMY RESERVE
Ph. 972-352-9187

Comments:
Please ensure that Dr. Lewis and the board members
receive the following (5) Page document.

Cc: Attorney Craig Driskell

*437 days*

*( Letter / fax
dated 11/28/07 )*

13

## POSITIVE EVENTS CORNISH WAS INVOLVED IN WITH LISD

November 5. 2005 - Cornish settles job discrimination lawsuit against LISD and is hired as a police officer. Chief Sam Allen is present and is aware of Cornish' military reserve status, Cornish knowledge of law enforcement, employment law, civil rights and discrimination laws. Chief Allen advises Cornish that he needs Cornish to bring the LISD POlice Department to a level of respectability because the department lacked professional creditability with Dr. Lewis and the Lancaster community due to the physical appearance of the department officers, education, training and profesional competence level of the department. Chief Allen stated that Dr. Lewis would not give the department any raises without first showing him that the police department was competent and profesional.

November 08, 2005 - Cornish begins his first day of work as an LISD Police Officer. As Chief Allen introduces Cornish he continually introduces Cornish as Cornish having been previously hired by LISD and later terminatd and Cornish initiated a discrimination lawsuit which was settled. This was a continual process. November 2005, Chief Allen introduces Cornish the same with the LISD Police personnel: Melba Thorne, Wille Johnson, H. Dean Gilliam, Eltoro Foster, Keith Wilkerson, and Anthony Austin. Chief Allen explains that advises Cornish that LISD Police Department needs Cornish's law enforcement, training, law enforcement experience, investigative skills, education, and military training and experience  to become a respected police department. Chief Allen explains to Cornish that none of the current police officers possessed sufficient experience in police investigations, police procedures, police reporting, and Chief Allen insisted that the department was viewed as a security department and not a police department. March 2006 Chief allen introduces Cornish to the then Junior High Principal Stephenie Norman and advised Mrs. Norman in Cornish's presence that Cornish had to file a discrimination suit in November 2005 - Cornish is given the Katrina Stephens investigation by Chief Allen and LT Wilkerson, due to Officer Anthony Austin's failure to file the high profiled Theft case which involved the LISD Majorettes sponsor stealing cash monies paid to her to purchase LISD Majorettes uniforms. Cornish and LT Wilkerson advised Cornish that they feared that Stephens would get away with theft ecause the case was never filed by Officer Austin or LISD Police. Chief Allen and LT Wilkerson advised Cornish that they feared that the department would be embarrassed if Stephenson walked away free without the case being filed some two months after Stephen's arrest. LT Wilkerson came to Cornish and asked Cornish if Cornish could file the case. Cornish advise LT Wilkerson that he could  and Cornish began and intensive investigation. Cornish initially advised LT Wilkerson that the simple charge of the Theft was the proper charge; however, LT Wilkerson insisted on filing Theft Fiduciary Responsibility of which Cornish complied with. When the case was presented to the District Attorney (Pat first name only) by Cornish, LT Wilkerson and Austin were present the DA Pat stated that the proper charge v

Nov 2005, Cornish observed that there was not a records management system being used by the LISD Police Department to track the reports and call for police service; therefore, Cornish presented and suggested to LT Wilkerson and Chief Allen that a simple microsoft excel spreadsheet designed by Cornish that tracked the report number, location, reporting officer, complainant name, date, and type of offense committed. Cornish also created a sheet called the Chief Board, this sheet contained and important offense/incidents that took place within the LISD that involved a police response. Chief Allen and LT wilkerson instructed the officers to utilize the reporting systems created by Cornish until it was replaced with the current records management system during the summer of 2006.

November and December 2005 during the Thanksgiving and Christmas Breaks the Lancaster High School was burglarized several times, Cornish was given the investigations which lead to the arrests, conviction, and restitution of Joey Franklin and several other youths involved.

14

January 2006, Cornish is made the Coordinator of the Junior Police Academy (JPA), transferred to the Junior High School. Chief Allen advises Cornish that the JPA Coodinators position was an actual coordinators position and paid a stipend, Cornish was never paid as a Coordinator and was possessed a 4 year and 2 year college degree. Cornish conducted daily classes with student without a budget, planning period or time being granting to formulate lesson plans. For the school year 2006-2007, Cornish was again assigned as the JPA Coordinator, this time against Cornish's prior recommendation the cjunior and the high school classes conflicted with time (half way into the junior high school class the high school class began, Cornish advised both Chief Allen and LT Wilkerson

January 2006 school year Officer Cornish and Officer Thorne begin speaking at the elementary schools within the LISD on gun safety (Eddie Eagle Safety Program) pursuant to orders of Chief Allen and the program is a success. March 2006, Cornish is given the position of the LISD Physical Fitness Coodinator and Cornish created the fitness test based on the Police Cooper's examination utilized by police officers throughout the nation. Cornish administered the first Internal LISD Police Department Chief Allen had for months advised Cornish individually and outside the presence of all other LISD Police employees that they all would be required to take the Cooper Examination until they pass it. LT Wilkerson prior to taking the examination on several ocassions asked Cornish if he (Wilkerson) would pass the examination, Cornish would advise him each time that it would be based on the standards of the Cooper's examinationOn that date none of LISD Police that were tested passed the examination. Cornish communicated the results of the examination to Chief Allen, LT Wilkerson, and all LISD Police employees. LT Wilkerson complained to Cornish that the runs 300 meters and 1.5 mile was to difficult to pass. Cornish responded that he was willing to modify the standards but only if the Chief of Police instucted him to do so.

March 07, 2006, While Cornish was teaching the JPA class (containing approximately twelve 7th and 8th grade males and one 7th grade female) LT wilkerson called a Cornish and advised Cornish to be present at a meeting at the LISD Junior High School. Cornish acknowledge that he would be there. Prior to the meeting Cornish called the front office of the LISD Junior High and requested that Cornish be relieved by a staff member to be present in the class room so that Cornish could make the meeting. LT Wilkerson phoned Cornish and Cornish advised LT Wilkerson that he was not able to leave because the class room was not covered with an teacher. Cornish continued to request by way of the intercom that the junior high school office staff provide him with a teacher to cover Cornish's class based on the LISD policey and law that prohibits teacher leaving students in a class room during school activities unattended. Former H/R Director Karla Brewer confirmed this. Cornish made the meeting on time prior to the meeting started, Gilliam and Austin were arrived 10-15 minutes after Cornish. LT Wilkerson after work met with Cornish and issued Cornish a Reprimand alleging that Cornish refused to attend the meeting a

April May 2006, Cornish investigates and clears up an improper charge of Theft filed by Officer Thorne and files the proper charge of Burglary of a building angainst Luca Fielder and several other LISD students that burglarized the LISD. Sports Complex at 200 E. Wintergreen. Results were convictions and court ordered restitution.

November 2005 - Cornish began assisting LISD Officers Austin, Gilliam, Thorne, and Foster in report writing and insisting that the officers hae the proper elements of an offense and arrest to file the proper charge. Cornish continually insisted that a spreadsheet be completed

May 2006 June 2006 Cornish began conducting numerous administrative investigations on behalf of the LISD H/R Director Pam Carroll, to determine if an to include: an LISD teacher utilized his position to promote website pornography. After a thorough investigation the teacher Mr. Cullen was cleared, taken off of administrative leave and returned to work with LISD, and other teachers allegedly assaulting students (Coach Grace, a child being struck on head by a teacher with a ruler, and Ezra at Mrs. Alba's school was allegedly assaulted by his teacher..

15

May 2006, Cornish was assigned to investigate the LISD computer thefts and discovered LISD ccustodians engaging in consumption of alcoholic beverages during business hours on LISD premises, which resulted in 4 to 5 LISD custodians being terminated

burglaries and thefts through the district. Cornish had previously advised LT Wilkerson that Dr. Smith's constant presence and allegedly sleeping at LISD facilities was suspect, but to no avail. Cornish assisted in preparing the narrative because the initial responding officers, Thorne and LT Wilkerson lacked the knowledge. After Thorne's failure to follow-up on the case, after the case was returned for corrections, Cornish was ordered to review the case and correct what ever deficiencies the District Attorney (DA) Office requested. Cornish was able to correct the deficiencies and the case was accepted by the DA and filed.

November 2006, Cornish files a successful Robbery Charge against severely problem student Resco Willins and Nathan Crawford at the Junior High School, the students were expelled as a result creating a safer and harmonious learning environment for other studens and teachers.

November and December 2006, Cornish is assulted by two juveniles while breaking up a fight at the Middle School. This is witnessed by Principal Nivens, Officer Thorne, Assistant Principal Bates. This results in Cornish guiding Officer Thorne in filing charges against the youth of Assault on a public servant.

September 2006, Cornish began suggesting to both  Chief Allen and LT Wilkerson that mandating the entire police department in take the online Probable Cause, Search and Seizure classes (Texas Commission on Law Enforcement Standards and Education TECLLOSE) would improve the LISD professional knowledge on these matters.

April 2007, Cornish provided Chief Allen a copy of completion of both military training certificate 9 Week Course (Civil Affairs Qualification Course) and the Combined Arms Exercise Planning Course.

October 2006, Cornish coordinates JPA students for marching the parades, for years also.

November 2005, Cornish conducts daily duties of hall monitoring, investigations, JPA class room instructions, responding to calls, case filing, neighborhood patrol, and special events

16

October 2006 Chief Allen begins begins contacting Cornish regarding Dr. Lewis slashing public safety (police) budget the 2nd year in a row. Allen asked Cornish to contact board members to let them know, Allen stated to Cornish that he had promised Dr. Lewis that he would not contact any board members, but advised Cornish that slashing of the police budget needed to be communicated to the board members. Cornish spoke Kirland, Morris, and the husband of one of the board members. I did speak to Kirkland and Morris on these matters and advised Chief Allen and LT Wilkerson.

June 2006, Chief Allen begin encouraging Cornish and other Officers to file grievances on pay based on White Officer Gilliam (highest paid) a police Officer with the same rank and duties as Cornish and other officers but neither the experience, police training, technical knowledge, education, and military training of Cornish.
June 2006, Chief Allen phones Cornish during Cornish's military leave and instructs Cornish to help Officer Austin file the pay grievance. Cornish advises Allen that he would but that Cornish would advise Austin to file it indicating that Gilliam was White and paid more than the blacks historically. Chief Allen disagree with Cornish's analogy. Chief Allen informed Cornish that Dr. Lewis slashing the police (public safety) budget without the boards specifically knowing was illegal, Cornish did advise Austin on filing the grievance Austin too disagreed with Cornish's analogy of historical race discrimination because it was not political correct. Austing did not followup on the grievance and Cornish had to continually push the grievance forward which of which a 30% pay raise for police officers was provided.

November 2005 to the present, Cornish has always encouraged all LISD Police employees to follow the guidance of Chief Allen and LT Wilkerson, Cornish has voiced concerns openly but professionally about officers being forced to work overtime without pay, force overtime and ordered compensatory time in place of overtime pay by Chief Allen and LT Wilkerson. Chief Allen's analogy of restricting the overtime documents being submitted by police employees as detrimental to the police budget being increased due to the common practice universally that monies are not increased in budgets unless a need is shown and one of those identifiable needs being doucmented overtime pay.

There have been numerous emails sent by Chief Allen and LT Wilkerson that support officers being forced to work overtime and illegally ordered to submit compensatory time instead of overtime, unwarranted threats being made of officers being terminated with no reason, allegation, complaints only because of Chief Allens subjective feeling towrds the officers (Thorne and Foster). Officer forced to work without pay on bond election campaigns by both Chief Allen and LT Wilkerson. Officers being solicited and encouraged to file grievances by Chief Allen. Cornish being oscratsized for constantly for conducting military training even though Cornish's reports were always completed prior to his military leave. Chief Allen advised Cornish that he knew the value of Cornish previous civil rights suit filed against LISD and used that as a bartering tool to convince Dr. Lewis to hire him as Chief of Police (this is something that only Allen and Lewis would know) which I ask be considered as to the validity of my hostile environment complaint.

Cornish without merit has became the subject once again by LISD administrators (Chief Allen and LT Wilkerson) of retaliation for filing discrimination grievances, opposing illegal overtime (overtime without pay, overtime being told what type compensation to take, overtime without pay during bod election campaigns), Cornish's involvement in his participation of military training.

17

I have often stated to Chief Allen that a superior is in agreater position to harm a subordinate due to his position alone. I have not done anything wrong and believe that should I be terminated it will be based on the protective activities that I engaged in and the previous stigma that LISD and it's officials haveplaced on me. I am in contact with the U.S. Labor Department (USERRA LAW) and pay and overtime should I be terminated I will seek al avenue of litigating the district and those individuals that have acted improperly under color of their office. I am not resigning, but have provided my orders to H/R Director because I have been ordered to active duty for 437 days and I will complain of any negative action that LISD takes related to my employment. I pray that you can filter out the ilegal and subjective conduct of both Chief Allen and LT Wilkerson and allow me to continual my employment in aiding LISD in furtherance of profesionalism. This is faxed to H/R Director Pam Carroll at 972-218-1401 (and CC: to my attorny Craig Driskell).

As our president says often, God Bless You and May God Continue to Bless America

Harold B. Cornish

18


YAHOO! MAIL

**Harold Cornish hostile work environment**                    Thursday, September 13, 2007 10:00 AM

From: "Harold Cornish" <hcbg@prodigy.net>
  To: pamelacarroll@lancasterisd.org, pamcarroll@lancasterisd.org
Bcc: "CALVIN HOWARD" <calvin_iptf@yahoo.com>


Mrs. Carroll,

I do believe that there is evidence of a hostile work environment within the police department. I have had conversations with Duncan, Thorne, Foster regarding their fears of being fired or discipline for taking overtime that they legitimately worked, undergoing opened verbal embarrassing criticism before the other officers, asking questions during briefing that are relevant to our job, being forced to volunteer our off-duty time to conduct bond election campaign drives and work the election polls, expected to complete our reports daily when we have to patrol the city of Lancaster neighbothood immediately after students buses leave making it impossible to complete our reports within the 8 hour tour. Officer Austin and Thorne have been down as many as 10 to 15 reports, Gilliam several also, I have been down several at a time. Chief Allen has always communicated to that he knows his troops and that they are afraid for their jobs and want do are say anything because they know that know one else will hire them. Should you investigate these matters please inform the officers that they must be truthful and that audits of their times sheets, computers logons after hours and be conducted to determine truthfulness etc. I am informing you because based on what Chief Allen communicated to me about his subordinates they may be reluctant in fully cooperating with an investigation. They have observed me on several occasions, even Stan Brien during metings with Chief Allen ask legitimate questions during daily briefings only to be blown off as being disruptive. I first observed this treatment being imposed on Foster and I advised all the oficers in the presence of Chief Allen and LT Wilkerson that the questions Foster asked were legitimate job related questions and the other officers should have the same questions. Officer Thorne has initiated numerous conversations with me while we patrol referencing the comments made during briefings by Chief Allen that he was going to fire her and Eltoro Foster.

I served on active duty in the U. S. Army as a commander over a drill sergeant unit. Drill Sergeants are the Soldiers that traditionally stood in the faces of young Soldiers yelling and criticizing the young Soldiers. The Today's Army has changed, this is no longer acceptable, Drill Sergeants have been instructed to speak and not yell, instruct and train but not criticize. I ensured that all 16 plus Drill Sergeants under my command followed the Today's Army way.

There would be a defense of ignorance, however, I continually met with both Chief Allen and LT Wilkerson on their demeaning language and atitude displayed towards their subordinates.

When I went on military leave in 2006, I carried my LISD cell phone with me. It was only after I advise Chief Allen between December 2006 and February 2007 that I had to go away for mandatory training for 9 weeks from Feb 2007 to Apr 2007, that he began to talk critical of my military leave, take up my cell phone, deactivate my email account and take up my keys. Austin, Gilliam, Thorne, Duncan, Wilkerson, and Chief ALlen all retained these items when they were on leave and Duncan and Gilliam were out of the state. These are matters of public concern becasue they discriminate against me as a citizen Soldier (Army Reservist). Chief Allen advised me that he served in the U.S. Armed Forces; therefore, he knows that disparate treatment of reservists constitute discrimination. Chief Allen and LT Wilkerson both were always provide a hardcopy of my orders by me that shows my date of departure and date of return. I spoke with technology and they advised me that in order to deactivate a phone, email or reactivate the same they must receive a written note, letter, or email.

Please provide me a copy of the written documents that shows each time Chief ALlen, LT Wilkerson or the LISD Police Department requested that any LISD Officers cell phones, or email accounts be deactivated or reactivated since February 01, 2007 to the present.

19

There are emails on the system sent by LT Wilkerson, Officer Gilliam, and Chief Allen to all LISD Officer regarding LISD Bond election campaigns with the word "mandatory" for us to work this and this was done without paying any of use for the force labor.

I once before tried to get the administration to listen to matters of retaliation and my complaint fell on deaf ears.

The complaint regarding te excesive force filed by fleeing/resisting student Todd Brown was video recorded, and both LT Wilkerson and Chief Allen promised me that they would get me a copy of the video (on numerous different occasions). They never gave me a copy, they advised me that the machine recorded over the incident that clears me. I have requested a copy of the written statement of Teacher Schneider who assisted me in hand cufing the Brown, I have not received the statement, this is open records data, please provide me with a copy (redacted) of his statement.

Harold Cornish

P.S. I did leave Mrs. Woodberry a handwritten leter requesting for legible copies of the statememnts of Officer Thorne and Officer Duncan taken by LT Wilkerson, if you review closely these were the most neutral and truthful statements but Thorne is afraid of being fired, and Duncan is a young new officer, they both require an interview outside the presence of the police administration and in a diferent setting.

20



**RE: race discrimination grievance on pay**                                        Tuesday, June 19, 2007 1:08 PM

From: "Harold Cornish" <HaroldCornish@lancasterisd.org>
To: "Pamela Carroll" <PamelaCarroll@lancasterisd.org>
Cc: "Sam Allen" <SamAllen@lancasterisd.org>, hcbg@prodigy.net

Chief Allen advise me that he forwarded the grievance to you. If you need anoth copy I will provide it.

---

**From:** Pamela Carroll
**Sent:** Tuesday, June 19, 2007 10:41 AM
**To:** Harold Cornish
**Subject:** RE: race discrimination grievance on pay

Ok, please bring the grievance to my office and I will take it forward.

---

**From:** Harold Cornish
**Sent:** Monday, June 18, 2007 7:12 PM
**To:** Pamela Carroll
**Subject:** RE: race discrimination grievance on pay

Absolutely not, I have never met with Dr. Lewis on any grievance. To my knowledge DR. Lewis has never addressed any of the police on any grievances.

---

**From:** Pamela Carroll
**Sent:** Monday, June 18, 2007 1:13 PM
**To:** Harold Cornish
**Subject:** RE: race discrimination grievance on pay

Was there a conversation with Dr. Lewis in some other setting about this?

---

**From:** Harold Cornish
**Sent:** Monday, June 18, 2007 1:01 PM
**To:** Pamela Carroll
**Subject:** RE: race discrimination grievance on pay

yes mam, I left it with Chief Allen just before I went on military leave.

---

**From:** Pamela Carroll
**Sent:** Monday, June 18, 2007 8:25 AM
**To:** Harold Cornish
**Subject:** RE: race discrimination grievance on pay

Did you file a formal grievance on this and when?

---

**From:** Harold Cornish

21

**Sent:** Friday, June 15, 2007 7:53 PM
**To:** Pamela Carroll
**Cc:** Sam Allen
**Subject:** RE: race discrimination grievance on pay

I would like to know if there is a status on the grievance.

---

**From:** Pamela Carroll
**Sent:** Friday, June 15, 2007 9:19 AM
**To:** Harold Cornish
**Cc:** Sam Allen
**Subject:** RE: race discrimination grievance on pay

Officer Cornish:
I was not offended at all nor did I feel you were attacking anyone. I do recall the conversation being about the form used to file a grievance. I don't recall any status questions. If you are still in need of the grievance form or have questions about the procedural or substantive contents let me know. Board policy DGBA, local speaks to the process.

---

**From:** Harold Cornish
**Sent:** Thursday, June 14, 2007 6:33 PM
**To:** Pamela Carroll
**Cc:** Sam Allen
**Subject:** race discrimination grievance on pay

During our conversation today, I did inquire about the status of the pay grievance based on race. I want to be clear on this matter, this (the grievance) is not a personal attack on Officer Gilliam. In order to prove or raise issues of discrimination, there must be similar circumstances and disparate treatment. You are correct when it is a pay issue. But for who? When I address any issue, I allow my passion to drive me to articulate in a form that is comprehensive to any willing arbitrator. I just do not want it misunderstood that I am attacking anyone, I deal with facts, as I see them, hear them etc. When you are trying to employ change no matter how civil you will face resistance in highly sophisticated forms.

I that your knowledge and training in employment law far exceeds mine and I respect that and pray that I have not offended you in clarifying the substance of the grievance(s).


Harold B. Cornish

22



**FW: race discrimination grievance on pay**                    Thursday, June 14, 2007 6:35 PM
From: "Harold Cornish" <HaroldCornish@lancasterisd.org>
  To: "Pamela Carroll" <PamelaCarroll@lancasterisd.org>
  Cc: "Sam Allen" <SamAllen@lancasterisd.org>, hcbg@prodigy.net

**From:** Harold Cornish
**Sent:** Thursday, June 14, 2007 6:33 PM
**To:** Pamela Carroll
**Cc:** Sam Allen
**Subject:** race discrimination grievance on pay

During our conversation today, I did inquire about the status of the pay grievance based on race. I want to be clear on this matter, this (the grievance) is not a personal attack on Officer Gilliam. In order to prove or raise issues of discrimination, there must be similar circumstances and disparate treatment. You are correct when it is a pay issue. But for who? When I address any issue, I allow my passion to drive me to articulate in a form that is comprehensive to any willing arbitrator. I just do not want it misunderstood that I am attacking anyone, I deal with facts, as I see them, hear them etc. When you are trying to employ change no matter how civil you will face resistance in highly sophisticated forms.

I that your knowledge and training in employment law far exceeds mine and I respect that and pray that I have not offended you in clarifying the substance of the grievance(s).


Harold B. Cornish

PS I contacted you after I was informed by Chief Allen that it was ok.

23



**Fwd: RE: status of your checking on whether a copy of Cornish's unredacted orders or needed**

Friday, October 19, 2007 7:54 AM

From: "Harold Cornish" <hcbg@prodigy.net>
To: "dexter caston" <castonde@ar-usacapoc.soc.mil>
  1 File (10KB)

RE: statu...

Note: forwarded message attached.

**Forwarded Message: RE: status of your checking on whether a copy of Cornish's unredacted orders or needed**

**RE: status of your checking on whether a copy of Cornish's unredacted orders or needed**

Thursday, October 18, 2007 8:56 AM

From: "Pamela Carroll" <PamelaCarroll@lancasterisd.org>
To: "Harold Cornish" <hcbg@prodigy.net>

**From:** Harold Cornish [mailto:hcbg@prodigy.net]
**Sent:** Thursday, October 18, 2007 8:10 AM
**To:** Pamela Carroll
**Subject:** RE: status of your checking on whether a copy of Cornish's unredacted orders or needed

Thanks,

Please forgive me for asking this question, but do I need to still provide copies of my orders (which were previously provided to both Chief Allen and LT Wilkerson).

*Pamela Carroll <PamelaCarroll@lancasterisd.org> wrote:*

It will not be necessary for you to submit copies of your orders unchanged.

**From:** Harold Cornish [mailto:hcbg@prodigy.net]
**Sent:** Monday, October 15, 2007 7:50 AM
**To:** Pamela Carroll; pamcarroll@lancasterisd.org; dexter caston
**Subject:** status of your checking on whether a copy of Cornish's unredacted orders or needed

You advised me that you would check with the attorney to determine if there was a need for my providing Chief Allen with a copy of my orders showing my salary. This is an attempt

to check the status on this matter.

I have not yet received copies of my orders since I returned, The computer system has been down I have been told by Major Caston.

Harold Cornish
Poilce Officer
LISD Police Department

25

# O'HANLON, McCOLLOM & DEMERATH

### ATTORNEYS AND COUNSELORS AT LAW

**808 WEST AVENUE**
**AUSTIN, TEXAS 78701**
**TELEPHONE: (512) 494-9949**
**FACSIMILE: (512) 494-9919**

**KEVIN O'HANLON**
CERTIFIED, CIVIL APPELLATE
CERTIFIED, CIVIL TRIAL

**LESLIE McCOLLOM**
CERTIFIED, CIVIL APPELLATE
CERTIFIED, LABOR AND EMPLOYMENT
TEXAS BOARD OF LEGAL SPECIALIZATION

September 4, 2009

**JUSTIN DEMERATH**

**JOHN-PETER LUND**
jplund@808west.com

**[Via facsimile to: (512) 463-2092]**
The Honorable Greg Abbott
Attorney General of Texas
Open Records Division
P.O. Box 12548
Austin, Texas 78711-2548

Re:    Request for Public Information Determination, as to whether the a school district must produce, pursuant to a public information request, an evaluation made by a psychologist employed by the district, of a police officer employed by the district

Dear General Abbott,

As legal counsel for Lancaster Independent School District (hereafter "Lancaster ISD" or "District"), I am requesting an opinion pursuant to the Texas Public Information Act ("Act"), Texas Government Code §552.301, regarding a request received by the District on August 25, 2009, from Leatrice Green, a copy of which is attached as Exhibit 1. This is the "10 day" letter, which is timely since the request was received by the District on August 25, 2008. The District will submit its "15 day letter" on or before September 15, 2008, as required by the Act, with full briefing and any and all additional relevant documents or sample documents.

Harold Cornish was employed as an officer by Lancaster ISD's Police Department. Stan Brein was employed by the District as Coordinator for Student Support Services and the Lancaster ISD Police School Psychologist. On June 14, 2007, Stan Brien created a report evaluating Officer Cornish as part of a routine review of District Police Department staff.

In a request dated August 25, 2009 (attached) Leatrice Green requested a copy of the report created by Mr. Brein. The report contains information that should be considered confidential and personal and therefore covered by the exceptions to mandatory disclosure of public information contained in Texas Gov't Code 552.101 and 552.102. Leatrice Green has not been designated as the agent of Mr. Cornish. In addition, we believe that the information requested should be excepted from disclosure under the litigation exception contained in Texas

26

Public Information Opinion Request
September 4, 2009
Page 2 of 2

Gov't Code 552.103 because it relates to litigation of a civil or criminal nature to which the state or a political subdivision is or may be a party.

Therefore, Lancaster ISD requests the Attorney General to render an opinion as to whether the report produced by Mr. Brein must be disclosed to the requestor, Leatrice Green. Thank you for your attention to this matter.

Sincerely,

John-Peter Lund

Cc:   Pamela Carroll
      Leatrice Green
      Harold Cornish

*27*

**From:** herbert green [mailto:owe0412@sbcglobal.net]
**Sent:** Tuesday, August 25, 2009 8:30 AM
**To:** Pamela Carroll
**Subject:** Open Records Request

Date: 8-25-09

Mrs. Carroll,


Please provide me a copy of the report that Stan Brien created in reference to LISD Police Officer Harold Cornish. I may be reached at 836 Vince Lane DeSoto, Texas 75115.


Leatrice Green

28

**EXHIBIT**

**1**

CERTIFICATE OF SERVICE

Plaintiff Cornish certify that the Defendants were served with a true and correct copy of the lawsuit and Appendices on April 20, 2010 to the following Defendants as follow:

1. For Defendant Lancaster Independent School District and/or Lancaster Independent School District Board of Trustees to Board President Carolyn Morris at 422 S. Centre Avenue Lancaster, Texas 75146 by U.S. Postal Certified Mail Receipt #70063450000226127821.

2. For Defendant Former Superintendent Larry Lewis at 1208 E. Pleasant Run Rd Cedar Hill Texas 75104-4100 by U.S. Postal Certified Mail Receipt #70063450000226127838.

3. To Defendant Lancaster Independent School District Interim Superintendent Dana Marable at 422 S. Centre Avenue Lancaster, Texas 75146 by U.S. Postal Certified Mail Receipt #70063450000226127845.

4. To Defendant Lancaster Independent School District Assistant Superintendent Eugene Young at 422 S. Centre Avenue Lancaster, Texas 75146 by U.S. Postal Certified Mail Receipt #70063450000226127852.

5. To Defendant Lancaster Independent School District Human Resource Director Pamela Carroll at 422 S. Centre Avenue Lancaster, Texas 75146  by U.S. Postal Certified Mail Receipt #70063450000226127869.

6. To Defendant Lancaster Independent School District Attorney Cynthia Hill at 306 W. 7th Street Suite 1045 Fort Worth, Texas 76102 by U.S. Postal Certified Mail Receipt #70063450000226127876.

7.  To Defendant Lancaster Independent School District Attorney Leslie McCollom and John  Peter Lund at 808 West Avenue Austin, Texas 78701, by U.S. Postal Certified Mail Receipt #70063450000226127883.

8. To Defendant Lancaster Independent School District Attorney John  Peter Lund at 808 West Avenue Austin, Texas 78701, by U.S. Postal Certified Mail Receipt #70080150000039888285

9. To Defendant Lancaster Independent School District Former Chief of Police Samuel Allen at 1653 S. Duncanville Road Cedar Hill, Texas 75104 by U.S. Postal Certified Mail Receipt #70063450000226127890.

10. To Defendant Lancaster Independent School District Acting Police Chief Keith Wilkerson at 422 S. Centre Avenue Lancaster, Texas 75146  by U.S. Postal Certified Mail Receipt #70063450000226127814.

11. Defendant Former Lancaster Independent School District Student Psychologist (NON -PH.D.) Stanley Brein 405 Pecan Hollow Drive Red Oak Texas 75154-4725 by U.S. Postal Certified Mail Receipt #70080150000039888247.

April 19, 2010

DATE

Harold Cornish PRO SE PLAINTIFF
601 Nora Lane DeSoto, Texas 75115
Primary Phone 972-352-9187
Secondary Phone 972-230-3775
Email Address.