UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

Harold B. Cornish

**CASE NO.3:10-CV-0797-D**

Plaintiff

**JURY TRIAL DEMANDED**

V.

Lancaster Independent School District and/or Lancaster Independent School District Board of Trustees
Former Superintendent Larry Lewis (Individual and Official Capacity)
Interim Superintendent Dana Marable (Individual and Official Capacity)
Human Resource Director Pamela Carroll (Individual and Official Capacity)
Assistant Superintendent Eugene Young (Individual and Official Capacity)
Attorney Cynthia Hill (Individual and Official Capacity)
Former Student Psychologist Stanley Brein (Individual and Official Capacity)
Former Chief of Police Samuel Allen (Individual and Official Capacity)
Acting Police Chief Keith Wilkerson (Individual and Official Capacity)
Attorney Leslie McCollom (Individual and Official Capacity)
Attorney John Peter Lund (Individual and in Official Capacity)
Principal Carma Morgan (Individual and in Official Capacity) New Defendant
Public Information Officer Anita McPartland (Individual and in Official Capacity) New Defendant
Frances Allen (Individual and in Official Capacity) New Defendant
Police Officer Cory Duncan (Individual and in Official Capacity) New Defendant
Defendants

**PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENTS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND (To include additional defendants and include additional charges**

Now comes the PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENTS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND (To include additional defendants and include additional charges against Defendants Lancaster Independent School District (L.I S.D.) and all individuals named or in the alternate Plaintiff's request for leave to amend a supplement plaintiffs second amended complaint to add additional defendants and additional charges against defendants.

## I.

## COMPLAINT AND JURY DEMAND

This is a title VII 1964 Civil Rights Act and as amended(retaliation), U.S. Codes 1981, 1983, 1985, federal law federal Hippa Law, U.S. 14th Amendment, and USERRA under federal statute 4301-4333, seeking damages against the defendant's as an organization, individually, and collectively. The defendants are sued individually and in their official capacity because they used the color of their office for the civil rights violations imposed on plaintiff based on their practices violating plaintiff's rights under federal, state school laws, and state laws. Plaintiff request all exemptions applicable the United States Soldier Sailor Relief Act.  **Plaintiff requests a jury trial to dispose of these facts.**

Plaintiff complied with the court's February 11, 2011 order (two re-serve all defendants with service of process by serving the defendants by summons, waiver summons and a copy civil coversheet and complaint. The last day of service fell on a Sunday; therefore, Defendant Hill was served on March 14, 2011.  Plaintiff was unable to serve defendant Brein and Lewis. Defendant Brein was never home. Defendant Lewis lives in a remote area where his home on his gated property six approximately 200 yards from the entry of the locked gate with no radio transmission to the house.

## II.

## JURISDICTION AND VENUE

1.  This court has jurisdiction over claim pursuant to 28 United States code 1331 and 1343(a)(2), 42 United States code 1981, 1983, 1985, 42 United States code 2000e et seq., federal Uniform Services Employment and Reemployment Rights Act of 1994 (USERRA and as amended), civil rights statues.

2.  The Court has supplemental jurisdiction over state civil torts that involve claims by plaintiff in this cause of the, Texas Education Code, Texas Penal Code, Texas Administrative Code, Texas Penal Code, Texas State Board of Psychological Examiners, and the Texas Occupation Code.

3.  The venue is proper in the Northern District Court of Texas pursuant to 28 US Co. 1391(b), because the acts or events complained of or committed or occurred within this district and all or nearly all defendants reside in this district.

## III.

## PARTIES

1.  Plaintiff Harold B. Cornish, as a citizen of the United States in a residence of Dallas County Texas. Plaintiff was an employee or former employee of defendant LISD during the time defendants caused injury to under federal and state statutes.

2.  The Defendants Lancaster Independent School District (LISD) is a school district that engages in business and commerce of public education school-age children, employing more than 500 employees in Dallas County, Texas.

PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENTS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND (To include additional defendants and include additional charges

2

3.  Defendant LISD is governed by Board of Trustees current board president is Joe Kana. LISD the district is being sued for allowing plaintiffs civil rights to be violated and other violations

4.  Defendant LISD's former superintendent Larry Lewis is sued individually and in his official capacity for use of the color of his office to violate plaintiff's civil rights and/or allowed plaintiff's civil rights to be violated.

5.  Defendant Dana Marable LISD's former interim superintendent Dana Marable is sued individually and in her official capacity for use of the color of her office to violate plaintiff's civil rights and/or allowed plaintiff's civil rights to be violated.

6.  Defendant LISD former chief of police Samuel Allen is sued individually and in his official capacity to violate plaintiff's civil rights and/or allowed plaintiff's civil rights to be violated.

7.  Defendant LISD former student psychologists Stanley Brein is sued individually and in his official capacity for use of the color of his office to violate and/or allowed plaintiffs civil rights to be violated and other violations.

8.  Defendant LISD chief of police key focus in is sued individually and in his official capacity for use of the call of his office to violate and/or allowed plaintiffs civil rights to be violated and other violations.

9.  Defendant LISD Human Resource Director Pamela Carroll is sued individually and in her official capacity for use of the color of his office to violate and/or allowed plaintiffs civil rights to be violated and other violations.

10. Defendant LISD assistant superintendent Eugene Young is sued individually and in his official capacity for use of the color of his office to violate and or allowed plaintiffs civil rights to be violated and other violations.

11. Defendant LISD attorney John Peter Lund is sued individually and in his official capacity for use of the color of his office to violate and/or allowed plan of civil rights to be violated and other violations.

12. Defendant LISD attorney Leslie McCollom is sued in her official capacity for use of the color of her office to violate and/or allowed plaintiffs civil rights to be violated.

13. Defendant LISD attorney Cynthia Hill is sued in her official capacity will use of the color of her official to violate plaintiff's civil rights and/or allowed plaintiff's civil rights to be violated and other violations.

14. Defendant Carma Morgan as LISD Disciplinary Alternative Education Program Campus Principal is being sued individually and in her official capacity to violate plaintiff's civil rights and/or allowed plaintiffs civil rights to be violated and other violations.

**PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENTS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND (To include additional defendants and include additional charges**

3

15. Defendant LISD police officer Cory Duncan is being sued individually and in his official capacity to violate plaintiffs civil rights and/or allowed plaintiffs civil rights to be violated and other violations.

16. Defendant LISD Texas Workforce Commission (TWC) representative is sued individually and in her official capacity to violate plaintiffs civil rights and or allowed plaintiffs civil rights to be violated and other violations.

17. Defendant LISD public information officer Anita McPartland is to in her official capacity and individual capacity for violating Plaintiffs civil rights in the other violations.

IV.

**FACTUAL STATEMENT OF THE CASE**

**November 18, 2002**, Plaintiff a license Texas peace officer, and commissioned officer in the U.S. Army Reserves began his career as a police officer with the Defendants Lancaster Independent School District while Plaintiff was suing the Dallas Police Department (Plt's former employer) for terminating plaintiff for alleged race discrimination and retaliation and other federal statutes. Defendants were aware of the administrative charges and other charges levied against Plaintiff by his former employer the City of Dallas Police Department (DPD) before the Defendants hired Plaintiff. Plaintiff actually started working for the Defendants on this day. Defendants were also aware of Plaintiff's termination at Correctional Services Corporation (CSC) a juvenile correction facility after Plaintiff reported to the corporate office and superiors that a co-worker had stabbed a 16 year male inmate in the hand with an ink pen while the inmate was asking the co-worker for candy.

**December 3, 2002**, During the defendants board hiring confirmation the former LISD board president Nannette Vick (race is Anglo-American), aware of Plaintiff's (whose race is African-American)race discrimination complaints and lawsuits against DPD addressed Plaintiff's engagements in opposition of employment discrimination in violation of Title VII to her peers and the Board voted by majority not to hire Plaintiff. Vick proposed to the board that because the Plaintiff was suing DPD that the Plaintiff may sue Defendants. There was one individual board member that opposed the retaliatory acts of the Defendants, LISD's for Vice Chairperson Carolyn Morris. Morris is a paralegal by profession, advised Plaintiff of the retaliatory acts of Defendants acts and Plaintiff was terminated on December 3, 2002, by LISD former Police Chief Carl R. Headen.  Plaintiff had conducted research of disparate treatment and disparate impact on the DPD's treatment of black police officer and reported his findings to the U.S. Department of Justice who conducted an inquiry that was publicized in the local news media, and the Dallas EEOC had ruled that discipline DPD had taken against Plaintiff in terminating him was in

retaliation for Plaintiff's engagement in protective activities in opposition of Title VII employment discrimination.

Defendant's former chief of police Carl Headen made false statements to the Texas Workforce Commission in an attempt to prevent Plaintiff from obtaining his unemployment benefits by alleging that Plaintiff did not report that he was terminated from one of Plaintiff's employers Correctional Serves Corporation (CSC) the same as Lyle B. Medlock Treatment Center (Feb 2000 – Nov 2001) for juvenile males detention center. Plaintiff had in fact wrote on his LISD application that he was terminated from CSC after Plaintiff had reported that a co-worker had stabbed a juvenile inmate in the hand with an ink pen and Plaintiff was told he was terminated because Plaintiff reported the event to the corporate office. Plaintiff advised Defendant Headen that Plaintiff had also reported the incident to the governing authorities the Dallas County Juvenile Department and Texas Commission on Alcohol and Drug Abuse (TCADA) and that each organization substantiated Plaintiff's reports and TCADA imposed a fine on CSC for the violations. The TWC supervisor after being provided a copy of Plaintiff's application by Plaintiff conducted a hearing with Headen and verified that Plaintiff had been truthful; thus TWC granted Plaintiff's benefit.

**December 2003** and later in May 2003, Plaintiff filed a written petition to the Defendants regarding the retaliatory termination they imposed on Plaintiff but it was to no avail, the board or it's officials would not hear Plaintiff's complaint. The Defendants had in place during this time and currently an anti retaliation employment discrimination policy.

**January 2003**, Plaintiff reported the retaliatory acts of Defendants to the Dallas Federal EEOC Office. The Equal Employment Opportunity Commission (EEOC) issued a finding against Defendants that they had in fact engaged in retaliatory employment action in violation of Title VII when they terminated Plaintiff's employment.

**May 2004**, Plaintiff mobilized on active duty to Ft. Sill Oklahoma for 1 year.

**May 2004**, the Dallas Federal EEOC Office issued Plaintiff a ruling that Defendants had retaliated against Plaintiff in violation of Title VII.   In the ruling it was identified that the Defendants knew of Plaintiff's disciplinary issues with DPD that Plaintiff was complaining was discriminatory; therefore, Defendants then or now can't plead an affirmative defense of after acquired evidence on the career of Plaintiff with DPD and or CSC.

**November 2004,** Plaintiff filed a Title VII retaliation claim against Defendants in the U.s. Northern District Court of Dallas Texas Case #3:04-CV-2368G, alleging that Defendants had wrongfully terminated Plaintiff for Plaintiff's participatory opposition to employment discrimination.

**May 2005,** Plaintiff returned from active duty and Plaintiff began receiving phone calls from Defendant S. Allen who was then seeking the Chief of Police position with LISD. S. Allen informed Plaintiff that he was in negotiations with Defendant Lewis of obtaining the LISD chief of police job and that he was using the fact that he knew Plaintiff and could possibly settle the lawsuit that Plaintiff had filed against Defendants. Defendant Allen continually advised Plaintiff that the LISD police force lacked adequately experienced, and training officers and that Defendant Allen had communicated this to Defendant Lewis that Plaintiff would be able to bring professional credibility to the police department due to Plaintiff's vast and various law enforcement experience, military training, and education.

November 8, 2005, during Court ordered mediation Plaintiff and the Defendants former Chief S. Allen and Defendant former Superintendent Larry with 2 Texas Association of School Board insurance adjusters came to a settlement agreement to hire Plaintiff and provide plaintiff an undisclosed monetary amount.

## V.

## PLAINTIFF SETTLES PREVIOUS TITLE VII AGAINST DEFENDANTS (begins working for Defendants as a police officer)

**November 2005,** prior to the finalization of the mediation Defendant S. Allen had Plaintiff meet with him and Defendant Wilkerson at the LISD football stadium. Plaintiff rode a golf cart with Defendant Wilkerson (who was a lieutenant). Defendant Wilkerson spoke Plaintiff openly and advised Plaintiff that he had initially informed Chief Allen that hire Plaintiff would be committing political suicide because Plaintiff had filed discrimination lawsuit against the Defendants. Following the conversation Plaintiff reported this to Defendant S. Allen and he advised the Plaintiff that Defendant Wilkerson was intimidated by Plaintiff's experience, education, training, and military service. Defendant S. Allen advised Plaintiff that the LISD police agency lack professional competent police officers and that he needed Plaintiff to assist in promoting the professional development and image of the LISD and Allen stated that Defendant Lewis had stated that no raises will be given to the police department until they show progress in professionalism. Defendant S. Allen would re-state this to Plaintiff during Plaintiff's employment.

**November 8, 2005**, Plaintiff was hired by Defendants pending the Court's approval of settlement of Plaintiff's title VII claim against Defendants.

**November 20, 2005,** the Court ordered Mediation was settled, Plaintiff was hired. Upon Plaintiff's first day of hire Defendant S. Allen introduced Plaintiff to his police staff, advised the staff that Plaintiff had sued LISD to get the job as police officer. Defendant S. Allen did this continually throughout Plaintiff's career as a police officer with LISD even after Plaintiff asked to stop doing so. Defendant Allen advised every person that he introduced Plaintiff to about Plaintiff's retaliation lawsuit against Defendants that

PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENTS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND (To include additional defendants and include additional charges

6

Plaintiff had filed. When Plaintiff was hired by Defendants (November 8, 2005), the Plaintiff was immediately given a high profiled cases to conduct follow-up investigation of which LISD Officer Anthony Austin had failed to timely file. Plaintiff advised Defendant S. Allen that this was an opportunity to train Austin on how to conduct follow-up investigations and how to properly file a criminal offense with the Dallas District Attorney Office (DA). Officer Austin advised Plaintiff that neither Defendants S. Allen nor Wilkerson advised him as to what he needed to do to file the case with the DA. Plaintiff successfully prepared this case and all other cases that Plaintiff was assigned. Plaintiff while employed as a police officer with LISD was assigned by Defendant S. Allen to numerous high profiled incidents and had more exposure to the many different age groups of LISD students than any other police officer. Every assignment Plaintiff was provided as a police officer with LISD he successfully executed without incident. Plaintiff was assigned as the LISD Junior Police Academy (JPA) Coordinator for 5th to 12th grade students, training officers in proper report writing, the Eddie Eagle Gun Safety Counselor for ages K-3 to 4th grade students, LISD Army ROTC liaison, feeding the needy in the LISD area, speaking at public luncheons for LISD, conducting criminal and administrative investigations that involve allegations of assaults and other incidents made against teachers, conducting criminal and administrative investigations on the LISD custodian staff for theft of computers that lead to the termination of several custodian workers.

**December 2005**, Defendant S. Allen introduced Plaintiff to LISD High School Principal John Randall and advised Randall of Plaintiff's suit that Plaintiff filed against Defendants.

**December 2005**, Defendant S. Allen ordered that all LISD police officer must take the Cooper Physical Fitness examination consisting of pushups, vertical jump, sit-ups, 300 meter run, and 1.5 mile run. Defendant S. Allen made Plaintiff the coordinator and evaluator and that the officers had to take it until they passed it.

**February 2006**, Defendant S. Allen assigned Plaintiff to coordinate the JPA at the junior high school and introduced Plaintiff to Principal Stephanie Norman advising her of Plaintiff's suit he filed against Defendants.

**March 2006**, Defendant Wilkerson approached Plaintiff advising Plaintiff that he did not believe he could pass the 1.5 mile run. Plaintiff advised him that Defendant Allen could make whatever modifications he wishes to the examination but Plaintiff had to act according to Defendant S. Allen instructions. Defendant Wilkerson did not take this well, he stated that that was "Bull Shit." A few days after Defendant Wilkerson failed the physical fitness test evaluated by Plaintiff still in March 2006 Defendant Wilkerson attempted to formally discipline Plaintiff alleging that Plaintiff was insubordinate to his order to attend a morning meeting. Wilkerson was ordering Plaintiff to commit a violation of LISD

policy and Texas Education Code and abandon the students of 12 males and 1 female by leaving them unsupervised in the class room. Wilkerson made no arrangements to have the class supervised by any other adult. Plaintiff after several unsuccessful calls to the junior high office for assistance, Plaintiff marched the students to the office, left them there with the staff members and made the meeting on time and ahead of at least 3 other LISD officers. During the meeting with Defendant S. Allen and Wilkerson, Plaintiff witnessed Wilkerson make a false statement to Defendant S. Allen that Plaintiff often questioned Defendant Wilkerson's authority. When Plaintiff asked Defendant Wilkerson to state a time this was done, Defendant Wilkerson stated he was unable to recall any and he retracted his statement. Plaintiff was not disciplined for this incident as Defendant Allen advised him. Plaintiff according to Defendant S. Allen's statements to him was never disciplined by LISD as a police officer and Plaintiff would later advise Defendant Pamela Carroll the Human Resource Director of Defendants the same in the presence of Defendants Allen and Wilkerson, and Plaintiff's witnesses Danny Lawson and William Cowley later in September 2006. The Defendants have never disputed this. Plaintiff asked Defendant Allen to stop boasting Plaintiff's skills and education around Defendant Wilkerson (who was 2nd in command without much law enforcement experience and education during this time) and Defendant S. Allen advised Plaintiff that he was trying to push Defendant Wilkerson because he was not at the level in law enforcement and education that Plaintiff was and that S. Allen had made Wilkerson aware of this when Wilkerson asked S. Allen what did he need to do to get where Plaintiff was and S. Allen advised him first he needed to get an education. Plaintiff advised Defendant Allen that he was making Plaintiff a target of Defendant Wilkerson retaliation towards Plaintiff. At this time Plaintiff had been in law enforcement since 1983, it was now 1986, with college degrees, 15 years of military service as a commissioned officer, Plaintiff was 10 years senior to Defendant Wilkerson, who had approximately 7 years of very limited law enforcement experience and either none to a very small amount of college.

**April 2006**, Defendant S. Allen introduced Plaintiff to Defendant Stanley Brein, LISD's staff psychologist whose primary position was to evaluate school aged students only in the LISD district. During the introduction Defendant S. Allen again mentioned Plaintiff's filing of a lawsuit against Defendants to get employment.

**June 2006**, While Plaintiff was conducting military drill training, Defendant S. Allen frustrated that the only Anglo LISD police officer (H. Dean Gilliam)with the least amount of continuing education, with the same duties, assignments, and job title was being paid $10,000.00 more than all other LISD police officers (including one female Melba Thorne)under the same circumstances, phoned Plaintiff and asked Plaintiff to assist LISD police officer Anthony Austin with filing a pay grievance over fair and equal wages. Defendant S. Allen advised Plaintiff that he instructed Austin to get with Plaintiff on this matter

PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENTS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND (To include additional defendants and include additional charges

8

because he knew Plaintiff had the technical knowledge on grieving this issue. Plaintiff agreed he would get involved, Defendant S. Allen then stated if Plaintiff was asked by the superintendent or the administration for Plaintiff to say that we never had this conversation.

**September 2006**, Plaintiff reported to LISD chief maintenance official Larry Walls home to make a report of stolen or lost keys to possibly all LISD buildings. This created security concerns and Defendants S. Allen and Wilkerson ordered Plaintiff and his peers to work overtime around the clock an LISD police officer would be on-duty now that the keys were missing. Defendant Wilkerson's stated, "I am going to milk them Muther Fuckers for every dollar I can."

**November 2006,** the Keys were still missing, but now Defendant S. Allen, while still ordering mandatory overtime from police officer; he ordered a reduction in paying overtime without adjusting any police officers regular work schedule. Defendant S. Allen stated to the all present: Defendant Wilkerson, officers Eltoro Foster, H. Dean Gilliam, Melba Thorne, Anthony Austin, and Plaintiff that during a staff meeting an administrator Elvin Lotten had become critical of the overtime of the police department and that S. Allen had promised the Defendant Lewis that he would reduce the overtime. No adjustments to the work schedules were made to accommodate a reduction in police overtime by either Wilkerson or S. Allen and this was communicated to Defendants Carroll and Eugene Young during Plaintiff's Hostile Work environment complaint that would be investigated by Defendant Attorney Cynthia Hill.

November 2006, Defendant's Allen and Wilkerson began making it mandatory for LISD police officers to work LISD school district bond elections neighborhood campaigns without overtime compensation or any compensation. Plaintiff was shunned by booth S. Allen and Wilkerson when he challenged this as unlawful. Plaintiff and all other LISD officers according to their verbal statements to Plaintiff worked bond election campaigns pursuant to the verbal and email instructions of Defendants S. Allen and Wilkerson. When Plaintiff submitted overtime sheets he was told by Defendants S. Allen and Wilkerson that he would not be paid.

## VI.

## <u>DEFENDANTS START TO HARRASS PLAINTIFF OVER MILITARY OBLIGATION</u>

**November 2006**, while Plaintiff was attending military drill in Texas Defendant Allen by phone ordered Plaintiff to report to work at the end of his daily tour of his 3 day drill and Plaintiff advised S. Allen that it was illegal and that Plaintiff could be court martial for such a deed. Defendant S. Allen was a conscientious objector during the Vietnam conflict with some military experience as well as a trained administrator and should know better.

**December 6, 2006**, both Defendants Allen and Wilkerson came to the detail meeting room at LISD police station advising Plaintiff and other LISD police officers (Eltoro Foster, H. Dean Gilliam, Melba Thorne,

PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENTS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND (To include additional defendants and include additional charges

9

Anthony Austin, and rookie Cory Duncan) to re-submit their overtime cards and reduce the overtime and instead take compensatory time. Plaintiff refused to do so because Plaintiff had worked the overtime and believed that he should be lawfully paid. All other LISD police officers were afraid to take all their overtime and reduced it, they police officer later on different occasions advised Plaintiff that they knew he was the police officer paid overtime and Plaintiff advised each of them that it was because they allowed it.

**October December 2006**, Plaintiff and Defendant Wilkerson worked a disturbance that involved student Marquis Montgomery (now and adult) fight with 2 steak knives with another LISD juvenile student in the Rolling Hills apartment in Lancaster Texas. Plaintiff later would have to restrain Montgomery for refusing a search in January February 2007. Montgomery was a student that engaged in fights often on LISD campuses and Plaintiff advised Defendants S. Allen and Wilkerson showed a great deal for potential for violence and that LISD lacked resources to continually deal with Montgomery's violent and disruptive behavior. Montgomery has a felony assault conviction for Injury to an Elderly or Disabled Person.

**December 2006**, on 2 different occasions Plaintiff was nearly assaulted by Defendant S. Allen when Plaintiff was either trying to open or close a door. Defendant on each occasion pushed the door sharply nearly hitting Plaintiff in the face with the door. Plaintiff attempted to meet with S. Allen on these matters but it was to no avail. Plaintiff reported this to Defendant Carroll and Young and this as well as the overtime pay issue was investigated by Defendant Hill but Plaintiff was never contacted by Defendant Hill.

**January 2007**, Defendants S. Allen and Wilkerson hosted a school district police conference at the LISD high school where Defendant S. Allen stopped Plaintiff who was assisting in staging the refreshments area advising the visitors of all the accomplishments that Plaintiff had achieved in promoting LISD police Department. On visitor was present that witnessed this was as mutual acquaintance of booth Plaintiff and Defendant S. Allen was Dallas Independent School District Police LT Calvin Howard. Howard witnessed Allen telling the visitors that Plaintiff had previously sued LISD and that was how Plaintiff got the job. Howard provided a declaration to these facts that were provided to Defendant Carroll by Plaintiff.

**January 2007** Plaintiff in full police uniform found former LISD student Marquis Montgomery skipping class in the boy restroom at the LISD high school. Plaintiff escorted Montgomery (a Behavior Adjustment student) to the principal Verdie Sadberry's office and both Plaintiff and Sadberry escorted Montgomery to his class and before Montgomery was allowed to go into the class room he was advised that he would need to be frisked for weapons and he continually refused and became disruptive trying to enter the class room while disobeying Plaintiff's commands, Sadberry's commands and Calhoun's commands. Plaintiff

PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENTS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND (To include additional defendants and include additional charges

10

displaced his balance, requested a student notify other police officers and handcuffed and arrested Montgomery (5'9" 270 pounds) for resisting a search. This incident was video recorded by Defendant's video surveillance camera and the statements that Plaintiff collected from both Sadberry and Calhoun supports Plaintiff's actions; however, Defendant Carroll advised Plaintiff that neither of the statements of Sadberry or Calhoun could be located in the complaint file when Plaintiff requested copies.

VII.

## USE OF FORCE INCIDENTS

Plaintiff had to use reasonable force against several LISD students for reasons ranging from prevention of self inflicted injury, assault on others, fighting, assault on Plaintiff, and resisting searches. The majority of these incidents were video recorded and involved students that demonstrated a constant engagement in disruption, fights. Plaintiff had identified several students and advised Defendants S. Allen and Wilkerson that certain students (now adults) who were prone to future violence and needed to be referred out of LISD system where they could get the help they needed. Plaintiff had to use reasonable force against Quacy Bell (recently convicted of murder), Marquis Montgomery (recently convicted of felony assault), Todd Brown, Leonard Small, Jamesha Jackson, and a few others that occurred within a 3 year period. Rookie LISD police officer Duncan also had several incidents of use of force during his time of employment and he has not been demoted or in any manner treated as Plaintiff. Plaintiff has used force against LISD student to prevent self inflicted injuries, assaults on self, and other students all being justified under police and procedures.

## VIII.

## PLAINTIFF'S PRE-AFGHANISTAN HISTORY

**January 2007**, While Defendant S. Allen was introducing Plaintiff to the City of Lancaster Police Chief S. Allen told the chief that Plaintiff had sued the LISD to get the job and as plaintiff was walking away S. Allen slapped Plaintiff on the back of his head with his open palm. Plaintiff was embarrassed and just kept walking.

**January 2007,** late or early February 2007, Defendant S. Allen unsuccessfully request Plaintiff to request from Plaintiff's army reserve unit to postpone Plaintiff's mandatory schedules 9 wee military school (from Feb 9, 2007 to April 13, 2007) at the John F. Kennedy Special Warfare Building in Ft. Bragg North Carolina and became angry with Plaintiff when Plaintiff was not able to do so.

Defendants Allen and Wilkerson began continually making statements about Plaintiff's military leave; Plaintiff was never at work due to military leave or playing G.I. Joe that lead up to September 2007. January 2007, Plaintiff is informed by Dallas Independent school District Police LT Calvin Howard who is a retired army reservist that Defendant S. Allen phoned him and asked him if he could take away

PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENTS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND (To include additional defendants and include additional charges

11

Plaintiff's police credentials while Plaintiff was on military leave. Howard stated that he informed S. Allen that he could not and Howard provided a declaration to Plaintiff of these facts and Plaintiff provided the same to Defendant Carroll during the hostile work environment complaint filed by Plaintiff against S. Allen and Wilkerson. It was after this time that Defendant S. Allen began ordering Plaintiff to turn-in leave his LISD cell Phone when Plaintiff went on military leave. Defendants S. Allen and Wilkerson ordered Plaintiff not to be working with rookie police officer Defendant Duncan. Defendant S. Allen advised Plaintiff of the same not to work with rookie officer Duncan and Plaintiff complied as much as the work environment would allow.

**February – April 2007**, Plaintiff by phone several times spoke with rookie LISD police Defendant Cory Duncan and Duncan advised that S. Allen and Wilkerson stated that Plaintiff was the only person qualified to train Defendant Duncan but that Plaintiff was always gone on military leave.   When Plaintiff went on military leave that required orders Plaintiff always provided both Defendants S. Allen and Wilkerson with their individual copies and also each were provided yearly with a copy of Plaintiff's drill dates.

**April 2007,** following Plaintiff's return from 9 weeks of military training Plaintiff injured his wrist while breaking up a fight in the LISD high school lunch room between Marquis Montgomery and another unknown Black male student. While both Defendants S. Allen and Wilkerson were on-duty and at the same time working part time security at Red Oak Charter school. After Wilkerson and S. Allen were made aware of the disruption only Wilkerson arrived at the high school. According Doland Simmons the part time employer of Defendants S. Allen and Wilkerson they had been working during the same morning school hour for more than 6 months. Plaintiff informed Defendant Young of them not being present in the morning after the former LISD dispatcher Willie Johnson informed him that both Defendants in the morning during school hours double dipped by working part time at the same time at Red Oak Charter School for Doland Simmons. While Plaintiff wrist was swollen and packed in ice Defendant Wilkerson stated to Plaintiff that Plaintiff was not doing Wilkerson any good in the office and that Plaintiff could either get out in the hall with his swollen wrist or go home. Plaintiff chose to go home. Plaintiff went by the administration picked up workmen's compensation forms and went to the doctor recommended by Defendant F. Allen (then an administrative clerk in the administrative building). The doctor diagnosed Plaintiff with a sprain wrist and Plaintiff was off work for 7 days.

**April -May 2007**, Plaintiff made several attempts to meet with Defendant Young (regarding Plaintiff's hostile work environment) the immediate superior of Defendant S. Allen and it was to no avail there are emails that support this.

PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENTS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND (To include additional defendants and include additional charges

12

**May 2007**, Plaintiff had to restrain a fleeing, hiding, and resisting high school student Todd Brown (age 17) who was resisting a search. This was captured on the security video and Plaintiff reviewed it and asked Defendants S. Allen and Wilkerson for copies (verbally and by email) and they both advised that they would provide Plaintiff copies but later advised Plaintiff that the system had recorded over the video footage. Plaintiff viewed the video and it was clear showing Brown running, hiding, and resisting a search. Plaintiff was unable to handcuff Brown during the struggle so a teacher assisted him and this was displayed on the video.

**May 2007**, Plaintiff was ordered by Defendant Wilkerson to leave the high school, report to the LISD police station (middle school location) and conduct an investigation of a possible assault of Defendant S. Allen's friend granddaughter. While in the middle f the investigation Plaintiff received a notice from the LISD's form civilian police technician Willie Johnson that a meeting will be held at the police station at 1:30 pm. Plaintiff was phoned by Defendant Wilkerson at 1:24 pm and Plaintiff advised that he was on his way. Plaintiff sent Defendants S. Allen an email at 1:28 pm advising S. Allen that he needed time to complete his police reports before he went on his July 3 week military training. Plaintiff arrived at 1:30 Pm and Defendant S. Allen began to openly criticize Plaintiff stating that Plaintiff was late, asking Plaintiff what had Plaintiff been doing, Plaintiff reminded Defendant S. Allen that he was conducting the investigation that Wilkerson assigned him to that involved S. Allen's friend granddaughter and Defendant S. Allen was aware because Plaintiff and Allen together spoke with his friend. S. Allen order Plaintiff to take a seat and S. Allen advised the troops that LISD Officer Foster was terminated. Plaintiff asked questions about what procedures matters actions needed to be followed in the future if any LISD officer encountered an incident such as Foster and S. Allen became impatient yelled at Plaintiff and when Plaintiff raised his voice Defendant S. Allen stated to Plaintiff not to raise his voice in his house, and Plaintiff advised S. Allen that he only responded in the same manner that Defendant S. Allen addressed him. Defendant Allen and Wilkerson had a habit of yelling at other police officers and Plaintiff had met with them on several occasions addressing the issues. Defendant S. Allen began walking towards Plaintiff who was seated then stood up because he Plaintiff truly did not know what to expect because he had been assaulted by Defendant S. Allen in past few months on 3 different occasions. Defendant S. Allen dismissed Plaintiff and later met with Plaintiff stating to Plaintiff if Plaintiff raised his voice at him again in his house that he would fire Plaintiff. Plaintiff reminded Defendant S. Allen that he instigated the incident by yelling at Plaintiff and that Plaintiff had advised him in the past that this was unprofessional and belittles subordinates creating a hostile work environment.

**May-June 2007**, Plaintiff was breaking up a fight at LISD middle school when D. Mayberry assaulted Plaintiff by hitting Plaintiff in the back of his head and with the assistance of principal Bates and

PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENTS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND (To include additional defendants and include additional charges

13

Roosevelt Nivens D. Mayberry was arrested and charged with assault on a public servant (Case # JD 67168-X).

**June 2007**, Defendants Allen and Wilkerson had Plaintiff and rookie officer Defendant Duncan working together stenciling identification markers on LISD computers and S> Allen came to the room and told Plaintiff that he did not want Plaintiff working with Duncan.

**June 14, 2007**, Defendant S. Allen by color of his office had Defendant Brein under color of his office conduct a psychological evaluation on Plaintiff without Plaintiff's knowledge, consent or without Defendant Brein being properly credentialed to perform such an assessment on an adult. Defendant Brein provided a written evaluation assessment of Plaintiff to Defendant Allen, and Defendant Carroll was aware of this incident and took no actions to protect Plaintiff's rights under Health Insurance Portability and Accountability Act (HIPPA), and in violation of the Texas State Board of Psychological Examiner Board Rules 465.38 and 465.6 of which he was assessed a 2,000.00 fine and ordered to addition training on **August 12, 2010**, as a result of Plaintiff's complaint against him.  Defendants Brein and S. Allen conducted this illegal psychological evaluation with the intent using it for terminating Plaintiff because Plaintiff had filed grievances of hostile work environment against Defendants Allen and Wilkerson, because of Plaintiff's military obligations and because Plaintiff had in the past sued LISD for Title VII violation. Defendants Lewis, Young, Carroll, Hill, Lund, Marable, and McCollom were aware of these illegal acts and did nothing to protect Plaintiff from the illegal publication, defamation, and slanderous evaluation. Plaintiff learned of this illegal act after Plaintiff had returned from active duty tour around late June or early July 2009, during the time Defendants refused to re-employ Plaintiff to his lawful position as police officer a position that Plaintiff held before he left on active duty.

**July 13-30, 2007**, Plaintiff was on military leave attending the Combined Arms Exercise Course in Ft. Dix New Jersey. While there Plaintiff received phone calls from rookie LISD officer Duncan and Duncan repeated that both Defendants Wilkerson and S. Allen stated Plaintiff was the only one qualified to train Defendant Duncan.

July Plaintiff returned to work

**August 6, 2007**, Plaintiff requested from Defendant Wilkerson to take off for a Veteran Administration dental appointment and Defendant Wilkerson advised Plaintiff that he was never at work because Plaintiff was always gone on military leave. Defendant Wilkerson did authorize the leave.

**August 10-31, 2007,** Plaintiff was on military leave at Ft. Polk Louisiana.

**September 5, 2007**, 3 days following Plaintiff's return from military leave Defendant S. Allen requested Plaintiff to resign and when Plaintiff asked why Defendant Allen provided no reasons such as violation of any policy; Wilkerson was present during this meeting.

**September 6, 2007**, Defendant Wilkerson provided Plaintiff a copy of a notarized statement of Defendant S. Allen that stated to Plaintiff in the first paragraph, "On November 8, 2005, you were hired by Lancaster ISD Police Department, in part to resolve a lawsuit you filed against the district." Plaintiff was also provided a copy of the same document on September 7, 2007, by Defendant Carroll when Plaintiff was placed on administrative leave by Defendant S. Allen. Defendant S. Allen in this letter was attempting to slander Plaintiff as a rouge police officer and this was brought to the attention of Defendant Carroll by Plaintiff in the presence of Plaintiff's witnesses Lawson and Cowley but it was to no avail. Defendant Carroll after Plaintiff's request in the presence of witness Lawson that she would have an independent investigation conducted on the hostile work environment complaint Plaintiff filed against Defendants S. Allen and Wilkerson. This was conducted by Defendant Hill according to Defendant Carroll's statement to Plaintiff and was without merit according to Carroll.

**November 26, 2007,** Plaintiff was mobilized to support the Pasadena Texas 451st Civil Affairs Battalion Provincial Reconstruction Team in support of the global war on terrorism to Afghanistan.

**November 26, 2008,** Plaintiff and his assigned unit returned in the U.S. from Afghanistan and began out processing for leave to readjust to our civilian lives.

**November December 2008**, Defendant Duncan advised Plaintiff that Defendant Wilkerson stated to him that should Plaintiff returned to work from military service that Defendant Wilkerson would fire Defendant Duncan.

**November 2008**, Plaintiff filed a USERRA complaint with the U.S. Department of Labor regarding the hostility, discrimination, and retaliation Defendants imposed on Plaintiff due to Plaintiff's military obligation by continually negative statements made about Plaintiff's military service, military pay, training, and unsuccessful attempts to discipline Plaintiff.

IX.

## PLAINTIFF'S POST AFGHANISTAN HISTORY

**January 12, 2009,** Plaintiff ended his tour of military active duty orders and advised Defendant Wilkerson and Carroll that he would be returning back to work on April 9, 2009. Plaintiff had seen Defendant Wilkerson at the DeSoto High school in early January and Wilkerson asked Plaintiff when he was returning to work and Plaintiff advised April 9, 2009, on the same day are so Defendant Carroll phoned Plaintiff and asked Plaintiff the same question and Plaintiff told her the same thing.

**February 2009**, Plaintiff filed a USERRA complaint with the U.S. Department of Labor regarding the hostility, discrimination, and retaliation Defendants imposed on Plaintiff due to Plaintiff's military obligation by continually negative statements made about Plaintiff's military service, military pay, training, and unsuccessful attempts to discipline Plaintiff.

**January –April 2009** Defendant Wilkerson in anticipating Plaintiff returning back to work from his military tour, Defendant Wilkerson initiated email traffic and/or meetings with between Defendants Young, Carroll, Marable, Lund, and McCollom regarding Plaintiff Re-employment under the Veterans Re-employment Act. As a result Plaintiff would demoted from police officer to civilian truancy officer eliminating numerous of privileges and the status that police officer carry. The Defendants had while Plaintiff was on active duty hired another person as a police officer in Plaintiff position.

March 11, 209, Defendant Carroll initiated communication with Defendant Hill to sabotage Plaintiff's re-employment rights (following Plaintiff's 11/26/2007 to 1/12/2009 active military tour that included Afghanistan) under USERRA by alleging that Plaintiff had shown a pattern of insubordination. Nowhere does Defendant mention Plaintiff's USERRA, Hostile Work Environment complaint or the September 6 notarized statement to Plaintiff by former Chief S. Allen given to Plaintiff by Defendant Wilkerson, a statement that surely displays amicus because of Plaintiff's previous engagements in opposition of employment discrimination under Title VII.

**April 9, 2009**, Plaintiff returned back to work only to be continued on administrative leave. Plaintiff was never disciplined for any allegations against him as a Lancaster ISD Police officer prior to or following his tour to Afghanistan. This has never been disputed by Defendants during Plaintiff's Administrative termination hearings and the Defendant McCollom's pleadings.

**May 11, 2009**, Plaintiff was ordered by Defendant Carroll to return back to work under her supervision without Plaintiff's police credentials or police duties. Defendant Carroll stated to Plaintiff that he could come in and she could find something for him to do. But it did not involve law enforcement duties or anything remotely the same. Defendant Carroll originally stated that Plaintiff would keep his police commission and conduct investigations throughout the district as needed and anticipated advising the police department because they lacked experience. This was discussed verbally and by email between Defendant Carroll and Plaintiff. Defendant Carroll knew that Defendants had hired a new police officer Dyson while Plaintiff was on active duty and that Plaintiff was senior to at least one or 2 other LISD police officers, and that Plaintiff had filed USERRA and Title VII internal and external complaints against LISD former LISD chief of police S. Allen (who had been terminated while Plaintiff was on military tour).

**June –July 2009,** Plaintiff met with Defendants Marable, Young, and Carroll, Defendant Marable was trying to get Plaintiff to quit his job after Plaintiff had returned from activity military service. Defendant Marable stated that she had read all of Plaintiff's files and contained in that file Plaintiff would remind Marable during his February 22, 2010, hearing before Marable was the September 6, 2007, notarized

PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENTS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND (To include additional defendants and include additional charges

16

letter from Defendant S. Allen to Plaintiff evidencing retaliation under Title VII, U.S.C. 1981, 1983, and 1985.

**August September 2009**,  Defendant Carroll knowing that Plaintiff was being considered for employment with Dallas Independent School District (DISD) and was suing  provided DISD for the same type of employment discrimination that Defendants had previously imposed on Plaintiff when they refused to hire Plaintiff because Plaintiff had engaged in actions legally opposing Title VII discrimination against Defendants and DPD. Defendant Carroll released the records expunged by Texas District Court Janice Warder to DISD, documents that should have not been kept under the law by Defendants.  Plaintiff advised Defendant Carroll of this in June 2009 and between September and October 2006. Defendant Carroll also released documents from LISD of which Defendant Wilkerson unsuccessful attempts to discipline (Plaintiff that were quashed by Defendant Allen and never placed in Plaintiff's files) to DISD knowing that it was illegal to release the documents and that Plaintiff had pending U.S. Labor Department complaint and an internal hostile work environment complaint(s) pending against Defendants alleging Title VII and USERRA violation.

**October 2009**, Defendants Technology Department Manager Allan Steel advised Plaintiff that the emails between Defendants, Defendants and Plaintiff as well as all other emails are kept archived in their system and are not deleted. Defendant Carroll was advised by Plaintiff prior to Plaintiff November 26, 2007, Afghanistan tour to maintain copies of all documents pertaining to Plaintiff. Plaintiff has made this communication known to the legal counsel of the Defendants since the initiation of this action.

X.

**DEFENDANTS MAINTAINED DOCUMENTS ON PLAINTIFF THAT THE COURT ORDERED DESTROYED & RELEASE OF INFORMATIONS**

**October 13, 2009,**  in a stream of emails Defendant Carroll the LISD director of human resource advised Plaintiff that Defendants would not forward any recent training records (since Plaintiff's return from active duty military service) of Plaintiff to Plaintiff's licensing authority agency TCLEOSE regarding Plaintiff's training that Plaintiff had previously forwarded her.

**October 6-14, 2009,** in a stream of emails Defendant Carroll references Plaintiff's military leave as a privilege. The emails show Defendant Carroll's hostility towards Plaintiff's military service.

**October 26-30 2009**, Plaintiff was on military leave locally conducting an investigation on a subordinate Soldier and arrived during his lunch break at Defendant LISD's administrative building in the office of Defendant Carroll to review open recorded requested information as to what documents Defendants had in Plaintiff's files in the presence of Defendant Carroll's administrative assistant Mary Woodberry. Plaintiff observed that Defendants were still maintaining a copy of the expunction order of State of Texas

District Judge Janice Warder's related to Plaintiff. Plaintiff had informed Defendant Carroll around June and July 2009, that he suspected that the Defendants were still maintaining this information on Plaintiff with the purpose to use it against Plaintiff. Plaintiff advised Defendant Carroll that the law requires the destruction of the documents and that it was in violation of the court's order to maintain copies. Plaintiff also complained to Defendant Carroll that it was illegal for Defendants to release the expunged to DISD who had requested copies of Plaintiff's files.  These documents were maintained for the purpose of destroying Plaintiff's career and Defendant Carroll knew or should have known that the documents were illegal to possess and certainly illegal to release due to the Court's Order.

## XI.

## GRIEVANCES

Plaintiff filed internal grievance prior to his 2007 deployment to Afghanistan that included hostile work environment, unfair pay and following his returned Plaintiff grieved to the Defendant Carroll the Human Resource Director for the Defendants on Title VII, U.S.C. 1981, U.S.C. 1983, U.S.C. 1985, USERRA (4301-4333, and was not required according to Defendants policy to write a script grievance. Defendant Carroll the chief labor relation officer of the Defendants allowed Plaintiff's rights under Title VII, U.S.C. 1981, U.S.C. 1983, U.S.C. 1985, and USERRA (4301-4333). Defendant Carroll was provided a copy of the USERRA statue by Plaintiff after she told Plaintiff she had no knowledge of the statue. Plaintiff's issues were on retaliation, training, job assignments, demotion, hostile work environment, and defamation. Plaintiff was later told by Plaintiff not to plead his case to her, this was because Defendant Carroll had involved herself by color of her office to discriminate against Plaintiff or allow the discrimination of Plaintiff to take place by join forces with all other Defendants.

## XII.

## PLAINTIFF'S MALICIOUS DEMOTION AFTER ACTIVE MILITARY SERVICE

**November 4, 2009**, Plaintiff received a certified mailed copy of his peace officer license commission separation form from Defendant Wilkerson stating that the Defendants LISD would no longer be carrying Plaintiff's Texas Commission on Law Enforcement Officers Standards and Education (TCLEOSE) license. Defendant Carroll emailed Plaintiff a copy of the F-5 form around the same time showing that both Carroll and Wilkerson had a meeting of minds to deprive Plaintiff of his rights of employment under Title VII, U.S.C. 1981, 1983, 1985, and USERRA because his was within the year Plaintiff had returned from his long military tour of Afghanistan and the hostile work environment complaint that Plaintiff filed before his tour were still pending. Defendant Wilkerson and Carroll F-5 forms stated that Plaintiff left in good standing and that Plaintiff's position was eliminated. When Plaintiff addressed the Defendants

Board of Trustees that this action was illegal under USERRA and Title VII, the Defendant Carroll stated in the transcribed hearing that the position was not eliminated what a disputable issue.

November 12, 2009, Plaintiff  advised Defendant Carroll in an email that they were retaliating and discriminating against Plaintiff under Title VII and USERRA when they demoted Plaintiff from sworn police officer, eliminated Plaintiff's police position, hired and other in his position, while Plaintiff had pending and retaliation hostile work environment complaints that he filed with Defendant Carroll (LISD's chief EO representative) and while Plaintiff was on active duty performing military service.

**November 2009,** Defendants had all LISD police officer take a refresher course in the use of force. Plaintiff was currently assigned as a civilian truancy officer at the LISD DAEP campus and Defendants could have allowed Plaintiff to participate in this class because Plaintiff daily duties included supervising DAEP students many having continually displayed physically disruptive and violent behavior. During Plaintiff's Level III grievance Hearing on June 7, 2010, Defendant Carroll conceded that there was little difference between a police officer and truancy officer. Defendant Carroll even mentioned that the Truancy Officer like the police officer needs to be trained in the use of force and de-escalation of conflict; however, neither she as the Human resource Director or any LISD official allow Plaintiff to participate in any LISD sponsored training of certification and de-escalation of conflict training that was required by LISD according to TEA and TEC for any school employee that set foot in a class room supervising students to include the addition training for those supervising DAEP students. The Defendant's LISD during Plaintiff's employment as a police officer and as a demoted civilian truancy officer never once sponsored Plaintiff to attend any training certification course. As a police officer Plaintiff witnessed both Defendants Wilkerson and S. Allen schedule every police officer on the department and even the civilian police technician for LISD sponsored professional development courses and schools to include themselves, but Plaintiff never received this opportunity. Plaintiff had to maintain any law enforcement certification on his own initiative. Defendant Wilkerson was allowed to go to college on-duty and Plaintiff discussed these issues verbally and by email with Defendant S. Allen on numerous occasions to no avail.

XIII.

## PLAINTIFF ORDERED TO ACT DEFACTO TEACHER'S AIDE OR SCHOOL PROFESSION EMPLOYEE DUTIES

**November 18, 2009**, Plaintiff was assigned to work the Disciplinary Alternative Education (DAEP) campus under the immediate supervision of Defendant principal Carma Morgan. DAEP students are those students that have been re-assigned from the normal school setting due to persistent misbehavior to include violence and disruption. Defendant Morgan order Plaintiff to daily supervise the DAEP class in

the place of certified teachers. Defendant Morgan advised Plaintiff that both Defendants Marable and Young advised her to use the Plaintiff as she saw fit during both Plaintiff's and Morgan's new assignments at the DAEP campus. Morgan was aware of Plaintiff's previous Title VII lawsuit, grievances and USERRA complaints filed against Defendants. Defendants Morgan, Young, Marable, or Carroll knew that every school employee that supervises students in a class room had to be certified in accordance with state school laws TEC and/or TAC that are regulated by TEA. Neither one of these individual made any attempt to ensure that Plaintiff was certified according to class room certification law or certified in de-escalation of conflict and in use of restraints when assigned to DAEP campuses. This was deliberate because LISD had historically denied Plaintiff certified professional development training since his date of employment of November 8, 2005, as a police officer and now as a civilian demoted after returning from military service of this country.

XIV.

## PLAINTIFF EEOC COMPLAINT

**November 23, 2009**, Plaintiff filed a retaliation complaint with Dallas federal EEOC Office #450-2010-00754 (Plt App. 1-2) on the September 7, 2007 and/or September 6, 2007, administrative leave letter authored by Defendant S. Allen. This also complained about the illegal demotion to truancy officer, the fact that Defendant Wilkerson laid that plaintiff was demoted because his position was eliminated when Plaint had seniority over at least 2 to 3 police officer and that Defendant hired another police officer Dyson while Plaintiff was on active military duty. This evidence Title VII, retaliation, U.S.C. 1981, 1983, 1985, and USERRA violations.


XV.

## PLAINTIFF U.S. LABOR COMPLAINT

**December 9, 2009**, Plaintiff filed another USERRA complaint against the Defendants for the demotion from police to civilian truancy officer. The Defendant when demoting Plaintiff did not proved Plaintiff the same salary of 69,000.00 annually as was provided to the former LISD truancy officer Carl Johnson is evidence of reprisal. Defendants wanted Plaintiff to quit his job a job that Plaintiff had legally fought for and served his country expecting to return to his police officer position.

XVI.

## PLAINTIFF'S MALICIOUS ARREST AND PROSECUTION

**December 11, 2009**, Plaintiff while conducting his daily assigned duties supervising the class room of DAEP students as Plaintiff relieved Mr. Fuhr Plaintiff instructed the students as he did daily that they could not trade, share or swap food during their lunch period of which Plaintiff was supervising. Plaintiff

PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENTS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND (To include additional defendants and include additional charges

20

observed a an unknown high school Black female older student take French fries from the lunch of another DAEP 5th grader male student and Plaintiff instructed her to take her seat and that they could not share or trade food as ordered by Principal Carma Morgan. At this time DAEP student ZD (that Plaintiff observed to be sometimes loud talking about fighting frequently  and setting up fights between his younger sister and another DAEP student JB's younger sister a male student Black male age 16, 5'9" to 6'0" 180 pds) bullying another DAEP student SC for his apple during lunch. Plaintiff advised ZD that he was out order by getting out of his seat without permission, to take his seat, and that he could not take the apple of SC (a chubby, quiet Hispanic male student age 17, 5'5" 200 pds). Plaintiff observed ZD without permission say loudly I am still hungry, without permission exit his seat at the rear of the class room, walk pass several Black DAEP students who were still eating their lunch, stand over SC and asked him if he wanted his apple while SC was still eating his lunch. After Plaintiff's verbal instructions failed to get ZD to comply, ZD began stating loudly that he could have the apple, and his disruptive behavior incited the other DAEP student to start chanting repeatedly "He can have that Apple!" ZD snatched the apple off the desk of SC and when Plaintiff approached him, asked for the apple, and reached to retrieve it the ZD assaulted Plaintiff with his right hand by knocked Plaintiff's reaching right hand down. Plaintiff immediately placed ZD in a bare hug with ZD's arms trapped under Plaintiff's arms (to prevent any further assault), lifted a struggling disruptive ZD off the floor and carried him outside into the corridor while ordering the other DAEP students to go have the staff call the police, but none of the student complied.  While Plaintiff was struggling to gain control of ZD Plaintiff observed an LISD maintenance man in the corridor and asked that he go summon the police. Plaintiff struggled with ZD for more than 10 minutes by himself. Plaintiff used only the force necessary to prevent any further assault on Plaintiff. Plaintiff was in compliance with the Texas Penal Code 9.62, Texas Education in preventing bullying, quelling a class room disruption, preventing the consequences of theft, and preventing any further assault on Plaintiff's person by restraining DAEP student ZD.  Plaintiff was arrested by Defendant Wilkerson after Plaintiff advised Wilkerson that he would provide Wilkerson and written statement. Defendant Wilkerson who Plaintiff had filed internal discrimination and hostile work environment complaints, EEOC and USERRA complaint against in making the arrest violated all protocols of arrest concerning a Class A Assault under the laws of arrest. Defendant Wilkerson also disregarded the previous Texas Attorney Generals Rulings on immunity from prosecution of school employees supervising students using reasonable force to restrain a disruptive student, and Texas Penal Code 9.62. Defendant Wilkerson was the senior ranking police officer on the scene when Plaintiff was arrested and transported to Lew Sterret Justice Center. Defendant either were told that they could not arrest Plaintiff for a class A Assault that they did not on view so Defendants maliciously upgraded the assault to a felony but later the magistrate

advised LISD Officer Austin that she was lowering the classification to a class A Assault because it did not meet the criteria for a felony as reported by Defendants. Plaintiff while employed as an LISD police officer knew the technical working history of all of their current officers except Dyson. Plaintiff observations as the key past investigator for LISD was that the LISD had very poor analytical investigative skills and report writing and organization skills. Plaintiff is expected to prove this through Defendant S. Allen whom Plaintiff had numerous conversations with and taught the police force in basic police report writing on a few occasions advised Defendant S. Allen that there was a great need for additional training in these areas including Defendant Wilkerson whose skills were very limited during that time.

**December 17, 2009**, Plaintiff provided a written statement regarding his restraining of DAEP student ZD on 12/11/2009, and faxed and emailed the statement to both Defendants Carroll and Marable. Immediately upon receipt of the document Plaintiff was phoned by Defendant Carroll and ordered to report to her office the following morning.

**December 17, 2009**, around this time Defendant Anita McPartland reported to a newspaper reporter out of Ellis County that Plaintiff was terminated for assaulting and/or abusing a 16 year old female when Defendant knew that this was not true and it was presented to further harm Plaintiff's professional image. Student ZD is a male and not a female. Defendant McPartland was aware that Plaintiff had pending USERRA complaints against the Defendants.

XVII.

<b><u>PLAINTIFF'S WRONGFUL TERMINATION</u></b>

**December 18, 2009,** Plaintiff reported to Defendant Carroll's office as ordered and she provided Plaintiff with a termination letter from Defendant Marable and it listed no reason for the termination of his employment.

**January 15, 2010,** Plaintiff promptly filed his grievance with Human Resource Director Defendant Carroll.

**January 19, 2010**, EEOC issued Plaintiff Right to Sue on Charge #450-2010—00754 (App. 1).

**February 15, 2010**, Plaintiff's legal counsel Craig Driskell presented his termination grievance before the Defendant Marable the interim superintendent and advised Marable that Plaintiff had grieved to Carroll the human resource director and according to Defendants written policy that this was in compliance with Defendants policy. Plaintiff advised the Defendant that he had been targeted due to his previous activities of opposing Title VII employment discrimination against the Defendants and other employers as well as his military obligation and association. Plaintiff presented evidence that when he had to use force against a disruptive DAEP student ZD was to terminate any further assault on Plaintiff and to quell a class room

<u>PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENTS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND (To include additional defendants and include additional charges</u>

22

disruption created by student ZD. Plaintiff was acting under the school laws of Texas as a De Facto professional school employee, teacher or teacher aide when he restrained student ZD. Plaintiff advised the Defendant Marable that he was ordered to supervise the student and therefore, had the same immunities under the laws of the Texas Penal Code 9.62 and other laws in accordance with the Texas Attorney Generals Rulings.

**February 22, 2010**, Defendant Marable refused to overturn Plaintiff's termination; therefore, continuing the established policy of the Defendants to historically discriminate (retaliation) against Plaintiff based on Title VII, U.S.C. 1981, 1983, 1985, and USERRA. Defendant Marable gave the reason for her termination of Plaintiff as Assault on student ZD.

**February 2010**, about this time Plaintiff spoke with Defendant Lewis and asked Defendant Lewis if he had recommended Plaintiff's termination following the recommendation for termination made by former Chief Defendant S. Allen and the Defendant Wilkerson. Defendant Lewis advised Plaintiff that he had absolutely not ever made such a recommendation regarding Plaintiff employment and advised Plaintiff that he Defendant Lewis understood that Defendants LISD had re-employed Plaintiff following Plaintiff's service military return and Plaintiff advised he was correct but they had demoted Plaintiff to truancy officer and later terminated Plaintiff in retaliation for Plaintiff past lawsuits and his military service.

**March 17, 2010**, Defendant Frances Allen while representing the Defendants during Plaintiff's appeal for unemployment benefits  to the Texas Workforce Commission (TWC) falsely presented to the TWC hearing officer by statement that Plaintiff was disciplined by Defendants LISD  for physically abusing LISD student prior to Plaintiff's military deployment to Afghanistan. The fact is that Plaintiff has never been discipline for abusing any LISD student. F. Allen knew the state that she was making was false and either was being coached to submit such a false statement to prevent Plaintiff from obtaining his rightful benefits due to the wrongful termination that the Defendants' imposed on Plaintiff. Defendant F. Allen was aware of Plaintiff's previous discrimination complaints filed by the Plaintiff against the Defendants LISD before she slander and defamed Plaintiff character and she in actions continued the discrimination of Plaintiff under Title VII, U.S.C. 1981, 1983, 1985, and USERRA.

**April 6, 2010**, Defendant Frances Allen while representing the Defendants during Plaintiff's appeal for unemployment benefits  to the Texas Workforce Commission (TWC) falsely presented to the TWC hearing officer by statement that Plaintiff was disciplined by Defendants LISD  for physically abusing LISD student prior to Plaintiff's military deployment to Afghanistan. The fact is that Plaintiff has never been discipline for abusing any LISD student. F. Allen knew the state that she was making was false and either was being coached to submit such a false statement to prevent Plaintiff from obtaining his rightful benefits due to the wrongful termination that the Defendants' imposed on Plaintiff. Defendant F. Allen

**PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENTS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND (To include additional defendants and include additional charges**

23

was aware of Plaintiff's previous discrimination complaints filed by the Plaintiff against the Defendants LISD before she slander and defamed Plaintiff character and she in actions continued the discrimination of Plaintiff under Title VII, U.S.C. 1981, 1983, 1985, and USERRA.

**June 7, 2010**, Plaintiff's legal counsel Craig Driskell presented his termination grievance before the Defendants Board of Trustees and advised the Board that Plaintiff had grieved to Carroll the human resource director and according to Defendants written policy that this was in compliance with Defendants policy. Plaintiff advised the Defendant that he had been targeted due to his previous activities of opposing Title VII employment discrimination against the Defendants and other employers as well as his military obligation and association. Plaintiff presented evidence that when he had to use force against a disruptive DAEP student ZD was to terminate any further assault on Plaintiff and to quell a class room disruption created by student ZD. Plaintiff was acting under the school laws of Texas as a De Facto professional school employee, teacher or teacher aide when he restrained student ZD. Plaintiff advised the board that he was ordered to supervise the student and therefore, had the same immunities under the laws of the Texas Penal Code 9.62 and other laws in accordance with the Texas Attorney Generals Rulings. Defendant refused to overturn Plaintiff's termination; therefore, continuing the established policy of the Defendants to historically discriminate (retaliation) against Plaintiff based on Title VII, U.S.C. 1981, 1983, 1985, and USERRA.

**July 23, 2010,** Plaintiff appealed the termination to The Texas Education Agency Commissioner (TEA) under TEC 7.057 which grants TEA the authority to hear grievances of employees aggrieved by violations of state school laws. The Defendant McCollom continually malicious plead in the administrative pleadings that the TEA lacked jurisdiction over Plaintiff's grievance which alleged that Defendants violated state school laws TEC 22.0512, Chapter 37, TAC 103.1201 and 103.1202, and other state school laws as well as Title VII and USERRA claims. McCollom used the color of her office to discriminate against Plaintiff knowing that Plaintiff had filed previous discrimination lawsuits against Defendants and she continually filed malicious pleadings with the TEA with the purpose of TEA ruling against Plaintiff's grievance of reinstatement for the wrongful termination imposed on Plaintiff by Defendants.

**October 19, 2010**, Defendant McCollom during an administrative law judge teleconference that included Plaintiff conceded that Plaintiff was covered by TEC 22.0511 from civil liability regarding the December 11, 2009, incident that involved Plaintiff restraining a disruptive and assaultive DAEP ZD at the DAEP campus of Defendants. To concede that Plaintiff was immune from civil liability is also to concede that Plaintiff was immune to administrative discipline under TEC 22.0512 and the Texas Penal Code (TPC) 9.62.

**October 14, 2010,** Plaintiff filed a retaliation complaint #450-2011-00366 with Dallas EEOC Office against Defendants regarding the illegal arrest of Plaintiff and wrongful termination of Plaintiff.

**December 2010,** Defendant Wilkerson submitted another F-5 Separation from to TCLEOSE on Plaintiff's certification falsifying the date of Plaintiff's separation being August 4, 2009, and that the separation was classified as dishonorable. This was malicious because after November 4, 2009, when Defendants Wilkerson and Carroll provided Plaintiff the F-5 form the form listed honorable discharge. Plaintiff contends whether honorable or dishonorable discharge that Defendants violated Plaintiff's right under Title VII, US.C. 1981, 1983, 1985, and U.S. 14th Amendment and USERRA when they separated Plaintiff's police commission.

**December 22, 2010,** Plaintiff received his Right to Sue Letter from EEOC Retaliation Charge #450-2011-00366 regarding Defendants December 11, 2009, illegal arrest of Plaintiff for assault on DAEP student ZD and the December 18, 2009, wrongful retaliatory termination of Plaintiff.  The charge references EEOC Charge #450-2010-00754.

**March 21, 2011**, Plaintiff criminal trial for malicious allegations that he assaulted DAEP student ZD will commence regarding the arrest and the action that Plaintiff took in compliance with the state penal laws, state school laws, and federal statutes.

XVIII.

<u>Count 1</u> Title VII Retaliation

Title VII (Retaliation)Defendants ET AL since Plaintiff's employment from November 2005, to December 18, 2009 and afterwards, engaged in the continual practice of discriminated against Plaintiff on a continual basis because Plaintiff had sued Defendants and other employers for Title VII violations, thus engaging in a protective activity and Defendants continually harassed Plaintiff of this, failed to train Plaintiff, attempted to unjustly disciplining Plaintiff, assaulted Plaintiff, demoted Plaintiff, terminated Plaintiff's employment, illegally arrested, charged, and prosecuted Plaintiff,  conducted or had conducted an illegal psychological evaluation on Plaintiff, failure to provide Plaintiff equal protection under the law from criminal prosecution, civil prosecution, and administrative discipline, falsely stating or publishing that that Plaintiff was disciplined for abusing school students,  falsely publishing and/or stating that Plaintiff abused or assaulted a female student to the Ellis County Newspaper reporter Megan Grey, historically practiced not processing Plaintiff's grievance. Defendants, individually and collectively with their attorneys Hill, McCollom, and Lund,  furthermore, defied state law, state school laws, state attorney general rulings, their policies to imposed the discriminatory practices on Plaintiff during his career and continues to this day as he defends malicious criminal charges. Defendants LISD and the named

individuals were either never trained on the employment related issues or they were poorly trained and neglected their duties to protect the Plaintiff under the said federal, state and local statues.

## XIX.

### Count 2 Hostile Work Environment

Defendants ET AL since Plaintiff's employment from November 2005, to December 18, 2009 and afterwards, engaged in the continual practice of discriminated hostility against Plaintiff on a continual basis because Plaintiff had sued Defendants and other employers for Title VII violations, thus engaging in a protective activity and Defendants continually harassed Plaintiff of this, failed to train Plaintiff, attempted to unjustly disciplining Plaintiff, assaulted Plaintiff, demoted Plaintiff, terminated  Plaintiff's employment, illegally arrested, charged, and prosecuted Plaintiff,  conducted or had conducted an illegal psychological evaluation on Plaintiff, failure to provide Plaintiff equal protection under the law from criminal prosecution, civil prosecution, and administrative discipline, falsely stating or publishing that that Plaintiff was disciplined for abusing school students,  falsely publishing and/or stating that Plaintiff abused or assaulted a female student to the Ellis County Newspaper reporter Megan Grey, historically practiced not processing Plaintiff's grievance. Defendants, individually and collectively with their attorneys Hill, McCollom, and Lund,  furthermore, defied state law, state school laws, state attorney general rulings, their policies to imposed the discriminatory practices on Plaintiff during his career and continues to this day as he defends malicious criminal charges. Defendants LISD and the named individuals were either never trained on the employment related issues or they were poorly trained and neglected their duties to protect the Plaintiff under the said federal, state and local statues.

XX.

### Count 3 U.S.C. 1981 Retaliation

Defendants ET AL since Plaintiff's employment from November 2005, to December 18, 2009 and afterwards, engaged in the continual practice of discriminated against Plaintiff on a continual basis because Plaintiff had sued Defendants and other employers for Title VII violations, thus engaging in a protective activity and Defendants continually harassed Plaintiff of this, failed to train Plaintiff, attempted to unjustly disciplining Plaintiff, assaulted Plaintiff, demoted Plaintiff, terminated  Plaintiff's employment, illegally arrested, charged, and prosecuted Plaintiff,  conducted or had conducted an illegal psychological evaluation on Plaintiff, failure to provide Plaintiff equal protection under the law from criminal prosecution, civil prosecution, and administrative discipline, falsely stating or publishing that that Plaintiff was disciplined for abusing school students,  falsely publishing and/or stating that Plaintiff abused or assaulted a female student to the Ellis County Newspaper reporter Megan Grey, historically practiced not processing Plaintiff's grievance. Defendants, individually and collectively with their

PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENTS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND (To include additional defendants and include additional charges

26

attorneys Hill, McCollom, and Lund,  furthermore, defied state law, state school laws, state attorney general rulings, their policies to imposed the discriminatory practices on Plaintiff during his career and continues to this day as he defends malicious criminal charges. Defendants LISD and the named individuals were either never trained on the employment related issues or they were poorly trained and neglected their duties to protect the Plaintiff under the said federal, state and local statues.

## <u>XXI.</u>

### <u>Count 4</u> U.S.C 1983

Defendants ET AL since Plaintiff's employment from November 2005, to December 18, 2009 and afterwards, engaged in the continual practice of using the color of their office to discriminated against Plaintiff on a continual basis because Plaintiff had sued Defendants and other employers for Title VII violations, and the other employer DPD was sued for race discrimination thus engaging in a protective activity and Defendants continually harassed Plaintiff of this, failed to train Plaintiff, attempted to unjustly disciplining Plaintiff, assaulted Plaintiff, demoted Plaintiff, terminated  Plaintiff's employment, illegally arrested, charged, and prosecuted Plaintiff,  conducted or had conducted an illegal psychological evaluation on Plaintiff, failure to provide Plaintiff equal protection under the law from criminal prosecution, civil prosecution, and administrative discipline, falsely stating or publishing that that Plaintiff was disciplined for abusing school students,  falsely publishing and/or stating that Plaintiff abused or assaulted a female student to the Ellis County Newspaper reporter Megan Grey, historically practiced not processing Plaintiff's grievance. Defendants, individually and collectively with their attorneys Hill, McCollom, and Lund,  furthermore, defied state law, state school laws, state attorney general rulings, their policies to imposed the discriminatory practices on Plaintiff during his career and continues to this day as he defends malicious criminal charges. Defendants LISD and the named individuals were either never trained on the employment related issues or they were poorly trained and neglected their duties to protect the Plaintiff under the said federal, state and local statues.

XXII.

### <u>Count 5</u> U.S.C. 1985 (Conspiracy)

Defendants ET AL since Plaintiff's employment from November 2005, to December 18, 2009 and afterwards, engaged in the continual practice of using the color of their office conspiring to discriminated against Plaintiff on a continual basis because Plaintiff had sued Defendants and other employers for Title VII violations, thus engaging in a protective activity and Defendants continually harassed Plaintiff of this, failed to train Plaintiff, attempted to unjustly disciplining Plaintiff, assaulted Plaintiff, demoted Plaintiff, terminated  Plaintiff's employment, illegally arrested, charged, and prosecuted Plaintiff,  conducted or had conducted an illegal psychological evaluation on Plaintiff, failure to provide Plaintiff equal protection

<u>PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENTS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND (To include additional defendants and include additional charges</u>

27

under the law from criminal prosecution, civil prosecution, and administrative discipline, falsely stating or publishing that that Plaintiff was disciplined for abusing school students, falsely publishing and/or stating that Plaintiff abused or assaulted a female student to the Ellis County Newspaper reporter Megan Grey, historically practiced not processing Plaintiff's grievance. Defendants, individually and collectively with their attorneys Hill, McCollom, and Lund, furthermore, defied state law, state school laws, state attorney general rulings, their policies to imposed the discriminatory practices on Plaintiff during his career and continues to this day as he defends malicious criminal charges. Defendants LISD and the named individuals were either never trained on the employment related issues or they were poorly trained and neglected their duties to protect the Plaintiff under the said federal, state and local statues.

XXIII.

## **Count 6** U.S. 14th **Amendment**

Defendants ET AL since Plaintiff's employment from November 2005, to December 18, 2009 and afterwards, engaged in the continual practice of using the color of their office conspiring to discriminated against Plaintiff on a continual basis because Plaintiff had sued Defendants and other employers for Title VII violations, thus engaging in a protective activity and Defendants continually harassed Plaintiff of this, failed to train Plaintiff, attempted to unjustly disciplining Plaintiff, assaulted Plaintiff, demoted Plaintiff, terminated Plaintiff's employment, illegally arrested, charged, and prosecuted Plaintiff, conducted or had conducted an illegal psychological evaluation on Plaintiff, failure to provide Plaintiff equal protection under the law from criminal prosecution, civil prosecution, and administrative discipline, falsely stating or publishing that that Plaintiff was disciplined for abusing school students, falsely publishing and/or stating that Plaintiff abused or assaulted a female student to the Ellis County Newspaper reporter Megan Grey, historically practiced not processing Plaintiff's grievance. Defendants, individually and collectively with their attorneys Hill, McCollom, and Lund, furthermore, defied state law, state school laws, state attorney general rulings, their policies to imposed the discriminatory practices on Plaintiff during his career and continues to this day as he defends malicious criminal charges. Defendants LISD and the named individuals were either never trained on the employment related issues or they were poorly trained and neglected their duties to protect the Plaintiff under the said federal, state and local statues.

XXIV.

## **Count 7** USERRA (4301-4333)

Defendants ET AL since Plaintiff's employment from November 2005, to December 18, 2009 and afterwards, engaged in the continual practice of using the color of their office conspiring to discriminated against Plaintiff on a continual basis because Plaintiff had sued Defendants and other employers for Title VII violations, thus engaging in a protective activity and Defendants continually harassed Plaintiff of this,

PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENTS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND (To include additional defendants and include additional charges

28

failed to train Plaintiff, attempted to unjustly disciplining Plaintiff, assaulted Plaintiff, demoted Plaintiff, terminated  Plaintiff's employment, illegally arrested, charged, and prosecuted Plaintiff,  conducted or had conducted an illegal psychological evaluation on Plaintiff, failure to provide Plaintiff equal protection under the law from criminal prosecution, civil prosecution, and administrative discipline, falsely stating or publishing that that Plaintiff was disciplined for abusing school students,  falsely publishing and/or stating that Plaintiff abused or assaulted a female student to the Ellis County Newspaper reporter Megan Grey, historically practiced not processing Plaintiff's grievance. Defendants, individually and collectively with their attorneys Hill, McCollom, and Lund,  furthermore, defied state law, state school laws, state attorney general rulings, their policies to imposed the discriminatory practices on Plaintiff during his career and continues to this day as he defends malicious criminal charges. Defendants LISD and the named individuals were either never trained on the employment related issues or they were poorly trained and neglected their duties to protect the Plaintiff under the said federal, state and local statues.

XXV.

## **PRAYER FOR RELIEF**

1. Pro Se Plaintiff prays that the Court Liberally construes Plaintiff pleadings in accordance with the law.

2. That the Court does not penalize Plaintiff for any past filings under Soldier Sailor Relief Act as previously plead by Plaintiff.

3. That the Court grants Plaintiff's day in Court as did the sister or fellow courts granted the late Robert Kearns in pleading his cause before the Court PRO SE.

4. Punitive and compensatory damages of back pay, and any other relief granted under Title VII, U.S.C. 1981, U.S.C. 1983, U.S.C. 1985, U.S. 14th Amendment, and USERRA.

5. Future monetary damages caused by Defendants that prevents Plaintiff from obtaining suitable employment under.

6. Consequential damages due to loss of job, earning capacity.

7. Future damages of employment, mental anguish.

8. Continual damages.

9. Discretionary damage as the Court deem just.

10. Double damages according to the statues of each charge.

11. General damages for the injuries Defendants inflicted on Plaintiff under each statue claimed.

12. Punitive damage for loss of job, wages, reputation, and future employment.

13. Pecuniary damages.

14. Expunction of plaintiff's records and personnel damage.

PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENTS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND (To include additional defendants and include additional charges

29

___/s/ Harold B. Cornish_____                    ___March 22, 2011
PRO SE PLAINTIFF Harold B. Cornish                                     DATE
601 Nora Lane DeSoto, Texas 75115
*Ph. 972-352-9187, Alt. 972-230-3775
Email. hcbg@prodigy.net